SUMMONS ISSUED

CV 12 2285

Ann Willoughby (AW 9412)
Willoughby & Giordano
245 Hillside Avenue
Williston Park, NY 11596    516-739-0177
awrglaw@gmail.com
Attorney for Plaintiff Natalie Garnet-Bishop

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  MAY 09 2012  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

SPATT, J.

LINDSAY, M

NATALIE GARNETT-BISHOP
                Plaintiff,

**VERIFIED COMPLAINT**

    v.

                      Case No.:

NEW YORK COMMUNITY BANCORP, INC.,
NEW YORK COMMUNITY BANK, and
ROSLYN SAVINGS BANK
                Defendants,

ECF CASE

**Jury Trial Demanded**

Plaintiff, Natalie Garnett-Bishop, by her attorneys Willoughby & Giordano, complaining of the

defendant, upon information and belief, alleges the following:

NATURE OF THE CASE

1.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as codified,

42 U.S.C. Sections 2000e et seq. ; the Age Discrimination in Employment Act of 1967 as

codified, 29 U.S.C. Sections 621 et seq. , and the Worker adjustment and Retraining Notification

Act as codified, 29 U.S.C. Sections 2101 et seq., as each has been amended, as well as the laws

of the state of New York, for employment discrimination based on gender, race and age and to

redress employment practices of the defendant in violation of those statutes.

1

JUSRISDICTION AND VENUE

2.     Jurisdiction is conferred by 42 U.S.C. Section 2000e(5); 28 U.S.C. Sections 1331 and

1343; 29 U.S.C. Sections 626( c )(1) and 626(e) and 42 U.S.C. Sections 1981 et seq. to redress

the unlawful deprivation of Plaintiff's rights, guaranteed and protected by federal law.   Plaintiff

further asserts claims under the New York state Human Rights Law as codified, New York State

Executive Law Sections 290 et seq., and the New York State Worker Adjustment and Retraining

Notification Act as codified New York State Labor Law Sections Sections 860 et seq., which

arise from a common nucleus of operative fact pursuant to 28 U.S.C. Section 1367 and for which

jurisdiction is based on the doctrine of pendant jurisdiction.

3.     Venue is proper in the Eastern District of New York under 28 U.S.C.  Section 1391(b)(1)

because the defendant resides within the Eastern District of New York within the meaning of 28

U.S.C. 1391(c); and under 28 U.S.C. Section 1391(b)(2) because a substantial part of the events

or omissions giving rise to the claim occurred in the Eastern District of New York.


PARTIES

4.     Plaintiff, Natalie Garnett-Bishop, is a citizen of the United States and resident of the State

of New York who at all times material to this action resides at 1566 13th Street, West Babylon,

New York, 11704.

5.     Plaintiff, Natalie Garnett-Bishop, is a Caucasian female whose date of birth is July 6,

1965, and was at all times relevant herein over the age of forty (40) years.

6.     Defendant, New York Community Bancorp, Inc., is a foreign corporation registered and

authorized to do business in New York with a principal office located at 615 Merrick Avenue,

Westbury, New York, 11590.

7.       Defendant, New York Community Bancorp, Inc., is the holding company for New York Community Bank.

8.       Defendant, New York Community Bank, is a New York State chartered savings bank .

9.       Defendant, Roslyn Savings Bank, is a division of New York Community Bank with all branches located in Nassau County or Suffolk County, State of New York State.

10.     Defendant, New York Community Bancorp Inc., hereinafter referred to as "Bancorp", is an 'employer' as defined in Section 292(5) of the New York State Executive Law in that Bancorp employs four (4) or more persons.

11.     Defendant, New York Community Bank, hereinafter referred to as "NYCB", is an 'employer' as defined in Section 292(5) of the New York State Executive Law in that NYCB employs four (4) or more persons.

12.     Defendant, Roslyn Savings Bank, hereinafter referred to as "Roslyn", is an 'employer' as defined in Section 292(5) of the New York State Executive Law in that Roslyn employs four (4) or more persons.


ADMINISTRATIVE PREREQUISITES TO ACTION

13.     Plaintiff did file a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission, New York Division, claiming discrimination based on gender, race and age.

14.     More than sixty days have elapsed since plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission, New York Division.

15.     Plaintiff was issued a "Right to Sue" letter dated February 10, 2012 and subsequent thereto.

16.     Copies of the plaintiff's charges and the Right to Sue Letter are annexed.


FACTS COMMON TO ALL CAUSES OF ACTION

17.     Natalie Garnett-Bishop was hired on or about December 2, 1991 by Roslyn Savings Bank

as a full time bank teller and remained employed on a continuous basis until her employment

was unlawfully terminated due to her gender, race and age on October 13, 2011.

18.     In or about 2003, Roslyn Bancorp Inc., the holding company for Roslyn Savings Bank ,

was acquired by Bancorp.

19.     In or about 2005, Natalie Garnett-Bishop was promoted to the position of Branch

Management Associate and was assigned first to the Commack branch of Roslyn Savings Bank,

where she worked for approximately one and one-half years.

20.     Thereafter, Natalie Garnett-Bishop was assigned to work at the Amityville branch of

Roslyn Savings Bank.

21.     As a Branch Management Associate, Natalie Garnett-Bishop's duties included the

supervision/oversight of other bank employees.

22.     During her tenure as a Branch Management Associate, Natalie Garnett-Bishop received

two disciplinary warnings, the most recent of which was received approximately four years prior

to the termination of her employment.  No additional disciplinary warnings were received prior

to the termination of her employment by the defendants.

23.     In or about 2006, and during her tenure as a Branch Management Associate, Natalie

Garnett-Bishop was disabled from her employment for a period of time due following surgery.

There were no subsequent periods of disability prior to the termination of her employment.

24.     In 2009 Natalie Garnett-Bishop requested a transfer, which request was granted.

25. From the time of the transfer until the termination of her employment, Natalie Garnett-Bishop was a full-time employee of Roslyn Savings Bank, working as a Floating Financial Service Associate in Region Four. In that capacity, she would be assigned to various branch locations within Region Four on a floating basis, depending upon staffing needs.

26. Natalie Garnett-Bishop was well qualified for that position.

27. As a Floating Financial Service Advisor, Natalie Garnett-Bishop was initially supervised by Eric Lange and later by Maureen Montalbano. These individuals were responsible for evaluating plaintiff's job performance.

28. Job performance evaluations were conducted on a regular basis and plaintiff's performance was never deemed to be poor or below acceptable levels.

29. Natalie Garnett-Bishop was awarded a raise in pay in January 2011 following the final job performance evaluation conducted prior to the termination of her employment.

30. Just weeks prior to October 13, 2001 Natalie Garnett-Bishop borrowed money from her employer sponsored 401K account.

31. On October 13, 2011 plaintiff reported to work at the Smithtown branch of Roslyn Savings Bank, as assigned, and was told by Branch Manager Jennifer Fasano that she was required to attend an 11 am meeting at the Islandia office.

32. Upon presenting to the Islandia office, Natalie Garnett-Bishop and an additional 27 employees from various branches in the Region were directed to sign in, enter a room and find the seat with their name.

33. Virginia Belling, the Regional Community Manager, and Maureen Montalbano, plaintiff's direct manager, advised the assembled employees that they were being terminated because their positions were no longer needed.

5

34.     The assembled employees, including the plaintiff, were given a packet by representatives of Bancorp's Human Relations Department which included a written statement averring .."After reviewing the company's staffing needs, it has been determined that your position will be eliminated."

35.     Of the 28 employees terminated at the Islandia office that day, 22 were women; the vast majority of the women were Caucasian and over 40 years of age.

36.     Natalie Garnett-Bishop was 46 years old when terminated.

37.     In total, New York Bancorp, Inc. terminated in excess of 50 employees from various divisions on October 13, 2011.

38.     Caucasian women over 40 years of age were disproportionately affected by the mass terminations.

39.     At no time prior to October 13, 2011 did New York Bancorp, Inc. advise Natalie Garnett-Bishop that a significant number of employee positions would be eliminated.

40.     Had such notice been given, Natalie Garnet –Bishop would not have borrowed money from her 401K account.

41.     Following her termination, Natalie Garnett-Bishop could no longer make the mandatory monthly loan payments.  As a result, her only option was to withdraw the entire contents of her 401k account, incurring associated penalties.

42.     Notwithstanding the defendant's representation that plaintiff's position had been eliminated, immediately following Natalie Garnett-Bishop's termination at least two employees were transferred into the float pool from other locations.

43.     In addition to the transfers, the float pool was expanded by the hiring of new, part-time employees after the terminations of October 13, 2011.

6

44.     In response to her written inquiry to the human resources department, plaintiff received a letter advising that the terminations were objectively based upon factors including recent disciplinary history, scores received in recent performance evaluations, branch audits and special skills.

45.     Natalie Garnett-Bishop had not received a disciplinary warning for approximately four years prior to her termination.

46.     Natalie Garnett-Bishop had never received a poor or unsatisfactory performance evaluation during her career at Roslyn Savings Bank.

47.     Because Natalie Garnett-Bishop was a floating FSA and not assigned to any specific branch, branch audits were irrelevant to her position.

48.     Natalie Garnett-Bishop had no period of disability for four years prior to the termination of her employment.

49.     In terminating plaintiff's employment, Bancorp, NYCB and Roslyn failed to adhere to their own policies and procedures regarding employee warnings, evaluations, coaching and termination.

50.     Subsequent to Plaintiff's termination, defendants have offered and continue to offer its current employees incentives to actively recruit new hires for various positions which were previously held by employees terminated on October 13, 2011.

51.     Subsequent to Plaintiff's termination, defendants have listed career opportunities on-line, including positions for Financial Service Associates.

52.     Bancorp, NYCB and Roslyn have engaged in a deliberate and calculated effort to conceal their illegal conduct by generating and issuing misleading and/or false and/or fabricated statements and documentation.

7

53.     Defendants' discriminatory and unlawful employment practices identified above have been intentional, deliberate, willful, systematic, and conducted in callous disregard of the rights of Natalie Garnett-Bishop.

54.     The practices were adopted, condoned, and approved by defendants' management.

55.     By reason of defendants' discriminatory employment practices, Natalie Garnett-Bishop has suffered embarrassment, emotional distress, humiliation, indignity and the resulting injury and loss. `

AS AND FOR A FIRST CAUSE OF ACTION

56.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs "1" through "53" of the Complaint as though set forth at length herein.

57.     This claim is authorized and instituted pursuant to 29 U.S.C. Sections 621 et seq. for relief based upon the unlawful employment practices of Bancorp, NYCB and Roslyn which are in violation of the statute's prohibition against discrimination in whole or in part based upon an employee's age.

58.     As set forth herein, plaintiff was a member of the class protected under the Age Discrimination in Employment Act of 1967.

59.     In addition to the plaintiff, two additional Financial Service Associates were terminated from employment at the Islandia office on October 13, 2011. Both of those individuals were over forty years of age.

60.     Financial Service Associates in the float pool who were under the age of thirty years were not terminated from employment.

8

61.    Although defendants initially asserted that plaintiff was terminated because her position was eliminated, her position in the float pool was filled immediately following her termination.

62.    Plaintiff's position was filled by an individual less than forty years of age.

63.    Defendants engaged in a course of conduct knowingly and explicitly intended to culminate in the termination of long term employees over the age of forty.

64.    In order to conceal their unlawful conduct, defendants falsely and belatedly claimed that the decision to plaintiff to terminate the plaintiff's employment was based on objective criteria applied equally to all employees.

65.    As set forth herein, any performance evaluations, disciplinary warnings or branch audits which are alleged to constitute an objective foundation for plaintiff's termination have been fabricated, falsified and contrived to conceal defendants' unlawful conduct.

66.    The defendants' conduct was a direct and proximate cause of the injuries, damages and harm suffered by plaintiff.

67.    Based upon the foregoing facts, plaintiff contends that she has been discriminated against by the defendant in that her age was a factor in defendant's decision to terminate her employment on October 13, 2011, in violation of the Age Discrimination in Employment Act of 1967 as codified, 29 U.S.C. Sections 621 et seq ., entitling her to monetary relief in the amount of two times her lost wages.


AS AND FOR A SECOND CAUSE OF ACTION

68. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs "1" through "67" of the Complaint as though set forth at length herein.


9

69.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil

Rights Act of 1964, as codified, 42 U.S.C. Sections 2000e et seq. and the New York State

Human Rights Law as codified, New York State Executive Law Sections 290 et seq., for relief

based upon the unlawful employment practices of Bancorp, NYCB and Roslyn which are in

violation of the statute's prohibition against discrimination in whole or in part based upon an

employee's gender.

70.     As set forth herein, plaintiff is a woman and is thus a member of a class protected under

Title VII and the New York State Human Rights Law against gender based discrimination.

71.     As set forth herein, 22 0f 28 employees terminated at the Islandia office on October 13,

2011 were women.

72.     In order to conceal their unlawful conduct, defendants falsely and belatedly claimed that

the decision to plaintiff to terminate the plaintiff's employment was based on objective criteria

applied equally to all employees.

73.     As set forth herein, any performance evaluations, disciplinary warnings or branch audits

which are alleged to constitute an objective foundation for plaintiff's termination have been

fabricated, falsified and contrived to conceal defendants' unlawful conduct.

74.     The defendants' conduct was a direct and proximate cause of the injuries, damages and

harm suffered by plaintiff.

75.     Based upon the foregoing facts, plaintiff contends that defendants illegally terminated her

employment on October 13, 2011 in that her gender was a factor in the decision to do so.

76.     Based upon the foregoing facts, plaintiff contends that she has been discriminated against

by the defendants in that her gender was a factor in defendants' decision to terminate her

employment on October 13, 2011, in violation of Title VII of the Civil Rights Act of 1964 as

codified, 42 U.S.C. Sections 2000e et seq. and the New York State Human Rights Law as codified, New York State Executive Law Sections 290 et seq., entitling her to monetary relief.

## AS AND FOR A THIRD CAUSE OF ACTION

77.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs "1" through '75' of the Complaint as though set forth at length herein.

78.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. Sections 2000e et seq. and the New York State Human Rights Law as codified, New York State Executive Law Sections 290 et seq., for relief based upon the unlawful employment practices of Bancorp, NYCB and Roslyn which are in violation of the statute's prohibition against discrimination in whole or in part based upon an employee's race.

79.     As set forth herein, plaintiff is Caucasian and a member of a class protected under Title VII and the New York State Human Rights Law against race based discrimination.

80.     As set forth herein, 22 0f 28 employees terminated at the Islandia office on October 13, 2011 were Caucasian.

81.     In order to conceal their unlawful conduct, defendants falsely and belatedly claimed that the decision to plaintiff to terminate the plaintiff's employment was based on objective criteria applied equally to all employees.

82.     As set forth herein, any performance evaluations, disciplinary warnings or branch audits which are alleged to constitute an objective foundation for plaintiff's termination have been fabricated, falsified and contrived to conceal defendants' unlawful conduct.

83.    The defendants' conduct was a direct and proximate cause of the injuries, damages and harm suffered by plaintiff.

84.    Based upon the foregoing facts, plaintiff contends that defendants illegally terminated her employment on October 13, 2011 in that her race was a factor in the decision to do so.

85.    Based upon the foregoing facts, plaintiff contends that she has been discriminated against by the defendants in that her race was a factor in defendant's decision to terminate her employment on October 13, 2011, in violation of Title VII of the Civil Rights Act of 1964 as codified, 42 U.S.C. Sections 2000e et seq. and the New York State Human Rights Law as codified, New York State Executive Law Sections 290 et seq., entitling her to monetary relief.


AS AND FOR A FOURTH CAUSE OF ACTION

86.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs "1" through "85" of the Complaint as though set forth at length herein.

87.    Plaintiff was terminated as part of a mass lay off or employment loss as set forth in the federal and state Worker Adjustment and Retraining Notification Acts as codified, 29 U.S.C. Sections 2101 et seq. and New York State Labor Law Sections 860 et seq.

88.    Defendants failed to give the requisite notice required by the applicable laws.

89.    The defendants' conduct was a direct and proximate cause of the injuries, damages and harm suffered by plaintiff.

90.    In an effort to avoid liability under the Worker Adjustment and Retraining Notification Acts, defendant engaged in a deliberate effort to alter and fabricate documentation intended to

12

substantiate a claim that plaintiff and others were discharged for cause.

91.     Based upon the foregoing facts, plaintiff contends that she has been injured by defendant's failure to give notice of the intended terminations in violation of the federal and state Worker adjustment and Retraining Notification Act as codified, 29 U.S.C. Sections 2101 et seq. and New York State Labor Law Sections 860 et seq., entitling her to monetary relief.

**WHEREFORE**, Plaintiff Natalie Garnett-Bishop requests judgment and damages against Defendant, New York Community Bancorp, Inc. as follows:

A.     An award to Ms. Garnett-Bishop for compensatory damages in amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life; and consequential loses;

B.     An award to Ms. Garnett-Bishop for exemplary and/or punitive damages in an amount to be shown at trial;

C.     An award to Ms. Garnett-Bishop for reasonable attorneys' fees and costs, including but not limited to expert witness fees, as provided in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-5(k), 42 U.S.C. Section 1981A, 42 U.S.C Section 1988 and as provided under state law;

D.     An award to Ms. Garnett-Bishop of interest on any awards at the highest rate allowed by law; and

E.     Such other and further relief as this Court deems just and appropriate.

PLAINTIFF REQUESTS TRIAL TO A JURY ON ALL CLAIMS ALLOWED BY LAW

Dated: Williston Park, New York
      May 8, 2012

Yours, etc.

Ann Willoughby, Esq.
Willoughby & Giordano
245 Hillside Avenue
Williston Park, NY 11596
516-739-0177

14

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: **Natalie Garnett-Bishop**<br>**13th Street**<br>**West Babylon, NY 11704** | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No.<br>**520-2012-00931** | EEOC Representative<br>**Orfelino Genao,**<br>**Investigator** | Telephone No.<br>**(212) 336-3642** |
|---|---|---|

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]    Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]    The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]    Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]    The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]    The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]    Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____      2-10-12

Enclosures(s)             **Kevin J. Berry,**          (Date Mailed)
                             **District Director**

cc:
     **NEW YORK COMMUNITY BANK (NYCB)**
     **615 Merrick Ave**
     **Westbury, NY 11590**



# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.

**1. Personal Information**

Last Name: Garnett-Bishop          First Name: Natalie          MI: J

Street or Mailing Address: 1566 13th Street          Apt Or Unit #:

City: West Babylon          County: Suffolk          State: New York          ZIP: 11704

Phone Numbers: Home: ( 631 ) 539-0787          Work: ( )

Cell: ( 631 ) 793-7069          Email Address: NATALIE070665@AOL.COM

Date of Birth: July 6, 1965          Sex: Male ☐   Female ☒   Do You Have a Disability? ☐ Yes ☒ No

Please answer each of the next three questions. i. Are you Hispanic or Latino? ☐ Yes ☒ No

ii. What is your Race? Please choose all that apply.   ☐ American Indian or Alaska Native   ☐ Asian   ☒ White

☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? Italian-American

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Scott A. Bishop          Relationship: Spouse

Address: 1566 13th Street          City: West Babylon          State: N.Y.   Zip Code: 11704

Home Phone: ( 631 ) 539-0787          Other Phone: ( 631 ) 559-7172

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) _____

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name: New York Community Bank (NYCB)

Address: 615 Merrick Road          County: Nassau

City: Westbury          State: N.Y.   Zip: 11590          Phone: ( 877 ) 786-6560

Type of Business: Bank          Job Location if different from Org. Address: Region Four (22 branches)

Human Resources Director or Owner Name: Joanne Strucker          Phone: 877-786-6560

**Number of Employees in the Organization at All Locations:** Please Check (√) One

☐ Fewer Than 15   ☐ 15 - 100   ☐ 101 - 200   ☐ 201 - 500   ☒ More than 500

**3. Your Employment Data** (Complete as many items as you can)   **Are you a Federal Employee?** ☐ Yes ☒ No

Date Hired: 12-2-91          Job Title At Hire: Full Time Teller

Pay Rate When Hired: $8.50 pr hour          Last or Current Pay Rate: $27.00 pr hour

Job Title at Time of Alleged Discrimination: Full Time Floating FSA          Date Quit/Discharged: 10-13-11

Name and Title of Immediate Supervisor: Maureen Montalbano- Regional Manager and 1st VP

2

Job Applicant, Date You Applied for Job _____  Job Title Applied For _____

**4.  What is the reason (basis) for your claim of employment discrimination?**
*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☒ Race  ☒ Sex  ☒ Age  ☐ Disability  ☐ National Origin  ☐ Religion  ☐ Retaliation  ☐ Pregnancy  ☐ Color (typically a difference in skin shade within the same race)  ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing  ☐ ii. family medical history  ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

Other reason (basis) for discrimination (Explain). _____

**5.  What happened to you that you believe was discriminatory?**  Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you.  Please attach additional pages if needed.
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A)  Date:  10-13-11          Action: Called to meeting at main branch location in Islandia , most all attendees older white women.

Name and Title of Person(s) Responsible: Virginia Belling-Regional Executive

B)  Date:                          Action:

Name and Title of Person(s) Responsible: _____

**6.  Why do you believe these actions were discriminatory?  Please attach additional pages if needed.**
I believe NYCB set out to fire the older full time female employees in order to replace them with part time younger people.

**7.  What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**
We were told that our positions were no longer needed and we were being termination by Regional Executive Virginia Belling

**8. Describe who was in the same or similar situation as you and how they were treated.  For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance?  Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination.  For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.**

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A.  Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Amanda Soto | white,female,22yrs old | Floating FSA |
| Description of Treatment  Has been with the bank for approximately five years,was not terminated and was able to retain her position as a floater and has been recently given a raise. | | |
| B.  Full Name | Race, sex, age, national origin, religion or disability | Job Title |
| Kim Gentile | white,female,26yrs old | Floating FSA |
| Description of Treatment  Has been with the bank approximately seven years,was not terminated and was able to retain her position as a floater will probably receive a raise this year after her review. | | |

3

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| MaryEllen (McBride ?) | white, female, mid 60's with disabilities | FSA- Financial Service Advisor |

Description of Treatment Was put into the Float Pool after I was terminated from that position. She does not drive and has disabilities that prevent her from taking more than one bus to get to destination

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Mary Forbes | white, female, mid 30's | BMA- Branch Management Associate |

Description of Treatment Was put into the Float Pool after I was terminated from that position. She has three children that need her close to home. Mary actually ended up quitting her job because of this and finding employment elsewhere.

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Michelle Maddelena | white, female, mid 50's | FSA - Financial Service Advisor |

Description of Treatment Michelle was in the meeting room with me the day we were let go. She did not Float from branch to branch but we both did the same job. She started working for the company 2 months before I did.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Sue Armentini | white, female, mid 50's | FSA - Financial Service Advisor |

Description of Treatment Sue was also in the meeting room with me the day we were let go. She also did not Float from branch to branch but we both did the same job. She worked for NYCB approximately 15 years.

Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9. Please check all that apply:

☐ Yes, I have a disability

☐ I do not have a disability now but I did have one

☐ No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?

Yes ☐   No ☐

If "Yes," what medication, medical equipment or other assistance do you use?

12. Did you ask your employer for any changes or assistance to do your job because of your disability?

Yes ☐   No ☐

If "YES", when did you ask? _____   How did you ask (verbally or in writing)? _____

Who did you ask? (Provide full name and job title of person)

Describe the changes or assistance that you asked for:

How did your employer respond to your request?

4

Are there any witnesses to the alleged discriminatory incidents?  If yes, please identify them below and tell us what they all say. (Please attach additional pages if needed to complete your response)

| A.  Full Name | Job Title | Address & Phone Number |
|---|---|---|

**What do you believe this person will tell us?**

| B.  Full Name | Job Title | Address & Phone Number |
|---|---|---|

**What do you believe this person will tell us?**
I know at least 19 or more ladies that will tell you that we had no idea we were going to be fired from our jobs on October 13th, 2011. They will tell you they did their job and tolerated challenging aspects of it with a smile on their face.

14.  **Have you filed a charge previously in this matter with EEOC or another agency?**     Yes ☐     No ☒

15.  **If you have filed a complaint with another agency, provide name of agency and date of filing:**
N/A

16.  **Have you sought help about this situation from a union, an attorney, or any other source?**     Yes ☒     No ☐
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Gruenberg & Kelly Attorneys at Law- Beginning of November ——No Result
Jacoby & Meyers LLP- Beginning of November —— No Result

**Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.**  If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws.  **If you do not file a charge of discrimination within the time limits, you will lose your rights.**  If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1.  If you want to file a charge, you should check Box 2.

Box 1 ☐ I want to talk to an EEOC employee before deciding whether to file a charge.  I understand that by checking this box, I have not filed a charge with the EEOC.  **I also understand that I could lose my rights if I do not file a charge in time.**

Box 2 ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above.  I understand that **the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.**  I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____        _____
**Signature**                          **Today's Date**

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1.  FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08).
2.  AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3.  PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4.  ROUTINE USES.  EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5.  WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.  Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

er Employer:New York Community Bank (NYCB)
                    615 Merrick Avenue
                    Westbury,N.Y.11590
                    1-877-786-6560
                    Date of Hire:12-2-1991
                    Date of Termination:10-13-2011
                    Last Position Held:Floating Financial Service Advisor(Floating FSA)
                                Region Four
                    Manager:Maureen Montalbano

To Whom It May Concern at the EEOC New York District Office,

I reported to work on Thursday,October 13th,2011 at the Smithtown branch of NYCB,and was told by the Branch Manager there, Mrs. Jennifer Fasano,that I needed to attend a meeting in one of our main branches at 11am. I was puzzled as to why I was to attend this meeting but went as requested.Upon entering the building of our Islandia Office,I saw many of my co-workers that work at other branches,most of whom I have known for most of my career at the bank.We all waited patiently in the lobby to go into the meeting room and were finally asked to form a line as we entered the doorway.We were then told to sign our names on "a sign in sheet" and to go into the meeting room and look for our names that were alphabetical order on the chairs inside. As I looked around the room of the employees that were gathered to this meeting, I noticed that we all held different job titles and worked at different branch locations. There were 6 men and 22 women, of the 6 men there were 2 of ethnic backround. Of the 22 women there were 4 of ethnic background.Of the 22 women there were 3 in their 20's, 2 of which were of ethnic background.The rest of the ladies were older and had been with the bank for a substantial amount of time.

After a few minutes we were greeted by District Manager Virginia Belling,Regional COMMUNITY Manager and my direct Manager Maureen Montalbano and the Regional COMMERCIAL Manager (name unremembered). Virginia Belling proceeded to tell us that our positions were "no longer needed" and we were being terminated.The three managers walked out and two human resource ladies came into the room. They handed us packets with our names on them and without any other explanation.I left the building in disbelief that after almost 20 years of service to this company I was being fired WITHOUT any prior warning.To make matters worse when I opened my packet that I was given I discovered my family and I would have NO medical insurance coverage and that my seperation pay was less than $3,500.I called a close friend that also worked for the bank in a different region and she informed me she too had been fired in a "meeting" at the Westbury Office under the same circumstances.

On Monday I found out from a still employed co-worker with the same title I formerly held,that my position was "INDEED"filled and that ADDITIONAL people were being added.Everyone else terminated with me has had their positions also filled either by other employees that were not offered a choice to transfer and by younger people hired as part timers.Quite a few of us consulted lawyers and I took the advice of one of the lawyers consulted by one of the ladies.We both wrote letters to the human resource department in attempts to get our fair share of seperation pay.We were sent identical letters that contained a paragraph assuring us that our termination was carefully

considered and we were let go based upon factors such as poor recent branch audits(which had nothing to do with the position I held),disability leave  frequency(my last disability was back in September 2007),recent disiplinary warnings both severity and frequency(my last warning was back in May 2007),and poor performance evaluations(which I never ever received in my whole career and in fact got a raise January 2011).I consuted two additional lawyers on my own thinking I might have been fired  because of my age and rate of pay.Both lawyers told me that I had NO case.

   I have no where to turn because of this situation that has happened to me and my family.The EEOC is my only hopes that my voice can be heard and this matter looked into.NYCB has put me and my family in a financial crisis by deciding to let me go.Since October both myself and my family have been trying to find employment to replace the income I was making. Without my paycheck we have been under tremendous economic stress regarding the reality of losing our home of 18 years to foreclosure.I greatly appreciate any attention you can give to investigating this mess that NYCB has created for alot of good people.


Sincerely,



Natalie J Garnett-Bishop
1566 13th Street
West Babylon,N.Y.11704
631-539-0787
Date of Birth:7-6-1965