UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NATALIE GARNETT-BISHOP,

                                      Plaintiff,                        **ORDER**
         -against-                                  CV 12-2285 (ADS)(ARL)

NEW YORK COMMUNITY BANCORP, INC. and
NEW YORK COMMUNITY BANK,

                                       Defendants.
----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      Before the court is the defendants' letter application for a protective order governing the exchange of confidential, proprietary and private documents in this action pursuant to Rule 26 of the Federal Rules of Civil Procedure. Plaintiff opposes the application. Defendants' request for the court to consider a reply to plaintiff's opposition is denied. For the reasons set forth below, defendants' motion for a protective order is granted.

      This case involves a claim by plaintiff Natalie Garnett-Bishop ("plaintiff") that she was terminated from her employment with defendants New York Community Bankcorp, Inc. and New York Community Bank ("NYCB") (collectively "defendants") on account of her age, gender and race without notice. By way of defense, defendants assert that due to changes in the retail banking industry, defendants reduced their retail workforce, including plaintiff's position, based on objective business criteria. During discovery, plaintiff served requests on defendants seeking to obtain the following categories of documents: (1) current and former NYCB employee personnel information including age, gender, performance scores, financial compensation and disciplinary history; (2) NYCB's proprietary retail branch office model and staffing analysis including confidential materials and data provided by third party consultants; (3) internal confidential documents regarding the performance scoring protocol and logistical details relating to the implementation of the reduction in force; and (4) NYCB management training curricula and course content. Shortly before defendants' responses were due, defendants served the plaintiff with a proposed confidentiality agreement, and "believing the proposed stipulation to be overbroad in its coverage" plaintiff declined to execute it. Defendants then served responses in which they objected to each document, based on privilege and/or the confidential nature of the document request, absent the entry of a confidentiality agreement. The parties disagree as to the necessity of a confidentiality agreement with respect to this discovery.

      Under Fed. R. Civ. P. 26(c), a "district court has broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be privileged or confidential." *Penthouse Int'l Ltd. v. Playboy Enter., Inc.,* 663 F.2d 371, 391 (2d Cir. 1981). Rule 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending" and that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Rule 26(c) "serves in part to protect parties'

privacy interests." *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010) (citations omitted). This rule "allows for the crafting of appropriate relief, including that the disclosure of discovery may be had only on specified terms and conditions." *Id.* (internal quotation marks and citations omitted). "Protective orders can take a variety of forms in order to fit the circumstances of the case." *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.,* 07 Civ. 2014 (SWK), 2008 WL 199537, at *2 (S.D.N.Y. Jan. 22, 2008). "The party seeking a protective order has the burden of showing that good cause exists for issuance of that order." *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 142 (2d Cir. 2004). "Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury." *In re Terrorist Attacks on September 11, 2001,* 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (internal quotation marks and citation omitted). Once the moving party has established good cause for entry of a protective order, "the court ultimately weighs the interests of both sides in fashioning an order." *Duling*, 266 F.R.D. at 71 (citations omitted).

With respect to the first category of documents, defendants maintain that a confidentiality order is necessary to protect the privacy interests of third parties (current and former employees) in their personnel records. Plaintiff's counsel, however, disagrees and is concerned that a protective order would impede her representation of other former NYCB employees whom she may represent in separate and subsequent litigation as she "fully anticipate[s] using discovery obtained herein in those actions" as well as utilizing such information in collaboration with the attorneys representing other claimants. Defense counsel states that defendants "do not object to [p]laintiff's counsel's use of the confidential documents in other lawsuits she is handling involving former employees who were laid off in the . . . workforce reduction . . . as long as the same safeguards protecting the dissemination of that information is in place for that litigation." Notably, defense counsel asked plaintiff's counsel to suggest some language to their proposed protective order that would permit her to use confidential documents in her actual and subsequent representation of former NYCB employees. Plaintiff's counsel, however, declined to do so and did not return defense counsel's telephone calls. "The fact that sensitive information is involved in litigation gives a party neither an absolute nor automatic right to have the discovery process hindered." *Johnson Foils, Inc. v. Huyck Corp.,* 61 F.R.D. 405, 409 (N.D.N.Y. 1973). That being said, however, "courts have generally characterized personnel files as confidential and found it appropriate to enter protective orders governing their use in litigation because of the inherent potential for harm or embarrassment if the information is revealed." *Duling*, 266 F.R.D. at 71-72 (collecting cases); *see United States v. Amodeo,* 71 F.3d 1044, 1050-51 (2d Cir. 1995) (stating that the "privacy interests of innocent third parties" should weigh heavily in a court's decision of whether to hold information confidential). Moreover, "[b]ecause legitimate privacy concerns exist with regard to personnel files, defendants clearly have a strong and legitimate interest in maintaining strict control over access to this information." *Perez v. Jupada Enters., Inc.*, No. 10 Civ. 3118, 2011 WL 501601, at *1 (S.D.N.Y. Feb. 14, 2011) (internal quotation marks and citations omitted); *see Ladson v. Ultra East Parking Corp.,* 164 F.R.D. 376, 377 n.2 (S.D.N.Y. 1996) (noting that a protective order permitting confidentiality designations addressed concerns regarding disclosure of personnel records in race and age discrimination case). Balancing plaintiff's interest in unrestricted use of the documents against defendants' stated interest in the privacy of their employees' personal information, the court agrees that a protective order is warranted. Plaintiff's concern that documents not entitled to protection will be designated

confidential, as well as defendants' concern in limiting secondary dissemination of the discovery in subsequent litigation can be alleviated by a targeted protective order crafted by the parties to avoid such concerns. *See, e.g., Duling*, 266 F.R.D. at 77.

With respect to the second category (the NYCB's proprietary retail branch staffing model), third category (NYCB's reduction in force logistical process), and fourth category (NYCB's training programs), the documents are also to remain confidential as they contain "internal financial analyses, business plans and other sensitive company information" that NYCB is entitled to protect from competitor's view. *Mitchell v. Metro. Life Ins. Co.,* No. 03 Civ. 10294 (WHP), 2004 WL 2439701, at *2 (S.D.N.Y. Nov. 2, 2004); *see Houbigant v. Dev. Specialists, Inc.,* No. 01 Civ. 7388 (LTS)(GWG), 2003 WL 21688243, at *2 (S.D.N.Y. July 21, 2003) (Rule 26(c) "specifically allows the issuance of a protective order to require a trade secret or other commercial research, development or commercial information not be revealed or be revealed only in a designated way"); *see also Brookdale Univ. Hosp. & Med. Ctr.,* No. 07-CV-1471 (RRM)(LB), 2008 WL 4541014, at *1-2 (E.D.N.Y. Oct. 7, 2008) (upholding confidentiality designations of documents that included "financial data, marketing and advertising data and plans, strategic or long-range plans, internal cost data, performance data, customer or vendor data [and] contracts and agreements with third parties" and observing that Rule 26(c)(1)(G) explicitly permits a court to "so order" a protective order to, inter alia, protect confidential research, development or other commercial information).

The parties are directed to meet and confer forthwith and to submit a joint proposed Confidentiality Agreement to be so ordered by the court by January 17, 2013.

Dated: Central Islip, New York  **SO ORDERED:**
January 8, 2013                         /s
                                        ARLENE R. LINDSAY
                                        United States Magistrate Judge