UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
NATALIE GARNETT-BISHOP,

        Plaintiff,

  -against-

NEW YORK COMMUNITY BANCORP, INC., and
NEW YORK COMMUNITY BANK,

        Defendants.
---------------------------------------------------------X
KATHLEEN WARSHUN and LYNETTE TIGER,

        Plaintiff,

  -against-

NEW YORK COMMUNITY BANCORP, INC., and
NEW YORK COMMUNITY BANK,

        Defendants.
---------------------------------------------------------X
DONNA CAPPELLO, DONNA BERCHIOLLI,
SHANNON BYRNES, THERESA FALCO, LESLIE
MORENCY, MARIE ALEXANDER, KATIA PAGE,
CELESTE MCCORMACK, AUDREY ZUCKERMAN,
MONICA ORTEGA, GELSOMINA TIERNO,
JAQUELINE RAMOS, NANSI GHOBRIAL, MARY
ELLEN CASSIDY, CANDICE PETRANCOSTA and
ADDOLORATA QUILES,

        Plaintiffs,

  -against-

NEW YORK COMMUNITY BANCORP, INC., NEW
YORK COMMUNITY BANK, JOSEPH FICALORA,
ROBERT WANN, WILLIAM DISALVATORE,
CYNTHIA FLYNN

        Defendants.
---------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**

12–CV–2285 (ADS)(ARL)

-----------------------------------------------------------X
DEE COOPER JONES, CLAIRE
BYRNES, ILENE BRANFMAN, GERALDINE
COLLINS, HELEN ARNIOTES and GINA
DECRESCENZO,

      Plaintiffs,

   -against-

NEW YORK COMMUNITY BANCORP, INC., NEW
YORK COMMUNITY BANK, JOSEPH FICALORA,
ROBERT WANN, WILLIAM DISALVATORE and
CYNTHIA FLYNN

      Defendants.
-----------------------------------------------------------X

SAMANTHA ZIELINSKI,

      Plaintiff,

   -against-

NEW YORK COMMUNITY BANCORP, INC., NEW
YORK COMMUNITY BANK, JOSEPH FICALORA,
ROBERT WANN, WILLIAM DISALVATORE,
CYNTHIA FLYNN

      Defendants.
-----------------------------------------------------------X

**APPEARANCES:**

**Willoughby & Giordano**
*Attorney for the Plaintiffs Natalie Garnett-Bishop, Kathleen Warshun and Lynette Tiger*
245 Hillside Avenue
Williston Park, New York 11596
 By:  Ann Willoughby, Esq., Of Counsel

**Patrick W. Johnson, Esq.**
*Attorney for the Plaintiffs Donna Cappello, Donna Berchiolli, Shannon Byrnes, Theresa Falco, Leslie Morency, Marie Alexander, Katia Page, Celeste McCormack, Audrey Zuckerman, Moncia Ortega, Gelsomina Tierno, Jacqueline Ramos, Nansi Ghorbrial, Mary Ellen Cassidy, Candice Petrancosta, Addolorata Quiles and Samantha Zielenski*
9118 Third Avenue
Brooklyn, NY 11209

**Theodore Pavlounis, Esq., P.C.**
*Attorneys for the Plaintiffs Dee Cooper Jones, Claire Byrnes, Ilene Branfman, Geraldine Collins, Helen Arniotes, Gina Descrescenzo, Linda Smith, Ann Abbruzzese, Maryann Golinello and Jillian Triano*
7706 13th Avenue
Brooklyn, New York 11228
   By:   Andrew G. Sfouggatakis, Esq., Of Counsel

**Little Mendelson P.C.**
*Attorneys for the Defendants New York Community Bancorp, Inc., New York Community Bank Corp., Inc., New York Community Bank, Joseph Ficalora, Robert Wann, William Disalvatore and Cynthia Flynn*
290 Broadhollow Road, Suite 305
Melville, NY 11747
   By:  Amy Laura Ventry-Kagan, Esq.
        James P. Smith, Esq.
        Robert M. Wolff, Esq., Of Counsel

**SPATT, District Judge:**

Five separate actions were brought against the Defendants New York Community Bancorp, Inc., New York Community Bank Corp., Inc., New York Community Bank ("NYCB"), Joseph Ficalora ("Ficalora"), Robert Wann ("Wann"), William Disalvatore ("Disalvatore") and/or Cynthia Flynn ("Flynn," and collectively, the "Defendants") arising from a reduction in force that occurred on October 13, 2011.

In this regard, on October 13, 2011, NYCB terminated the employment of approximately 265 employees working in its New York retail banking operations. The twenty-six Plaintiffs in the above-captioned actions represent some of these terminated employees. They claim, among other things, that the Defendants action in terminating them was the result of employment discrimination based on age, race, national origin, gender and/or disability and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (the "ADEA"); the Genetic Information Nondiscrimination Act, 42 U.S.C. § 2000ff, et seq. (the "GINA"); the American

With Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA"); § 102 of the Civil Rights Act of 1991, 42 U.S.C. 1981a; and the laws of the state of New York. The Plaintiffs also bring a claim pursuant to the Worker Adjustment and Retraining Notification Act, 42 USC § 12101, et seq. (the "WARN Act").

On January 8, 2014, the Court granted the Defendants' unopposed motion to consolidate the five separate actions pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 42 and directed the Plaintiffs to file a Consolidated Complaint incorporating the claims of the twenty-six Plaintiffs. The cases were consolidated as one action under Case Number 12–CV–2285, which was the first of the five lawsuits to be filed, and the other four cases were closed. In addition, the Court dismissed without prejudice all pending motions with leave to renew after the Plaintiffs filed a Consolidated Complaint.

Presently before the Court is the Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 as against the Plaintiff Natalie Garnett-Bishop, who asserts federal claims under Title VII, the ADEA and the WARN Act and state law claims under the New York State Human Rights Law ("NYSHRL") and New York State Labor Law ("NYSLL"). The Court also notes that the Defendants have moved pursuant to Fed. R. Civ. P. 12(b) to partially dismiss the Consolidated Complaint, as well as seek an order from this Court striking certain exhibits attached to the Plaintiffs' opposition to the Defendants' motion to dismiss. However, at this time, the Court only considers the Defendants' motion for summary judgment.

For the reasons that follow, the Court denies without prejudice the Defendants' motion for summary judgment as premature. The Court directs the Defendants to renew their motion when all discovery is completed in the consolidated action.

# I. BACKGROUND

## A. Underlying Facts Pertaining to NYCB's October 13, 2011 Reduction-in-Force

Collectively, the five actions before the Court involve a total of twenty-six Plaintiffs, all of whom are former NYCB employees. NYCB is a banking institution incorporated under the laws of the state of New York and governed by the federal banking laws of the United States. NYCB is a subsidiary of New York Community Bancorp, Inc., also referred to as New York Community Bank Corp., Inc. Ficalora was the President and Chief Executive Officer ("CEO") of NYCB; Wann was the Chief Operating Officer ("COO") of NYCB; DiSalvatore was a Director and assistant to the COO of NYCB; Flynn was a Chief Administrative Officer ("CAO") of NYCB. At all relevant times, NYCB had more than 1,000 employees.

Prior to October 13, 2011, NYCB classified its employees under one of the following four job classifications: (1) Branch Manager ("BM"); (2) Assistant Branch Manager ("ABM"); (3) Branch Management Associate ("BMA"); and (4) Financial Services Associate ("FSA"). In addition, NYCB used a "float pool," which was comprised of FSAs who worked on an "as needed" basis and floated between branches within a proximate geographic region.

On October 13, 2011, NYCB terminated approximately 265 employees. This reduction-in-force was decided upon because NYCB had observed decreased levels of customers coming into their branches and, thus, wanted to make its staffing more efficient. In this regard, NYCB completed a branch-by-branch review involving modeling its retail branch workforce against industry benchmarks. Further, NYCB hired a consultant to oversee the workflow and workforce at NYCB branches, as well as at competitor bank branches. Its review uncovered the fact that many of NYCB's branches were overstaffed, particularly in New York.

Accordingly, NYCB set out to make its New York retail branch operations run more efficiently. To that end, NYCB arranged groups of branches into "clusters" based on their geographic proximity to one another. In this way, NYCB could compare its employees working at different branches within the same region. NYCB would then retain the highest performing employees in each cluster, since an employee working at one branch in a particular cluster would be able to commute to any of the cluster's other branches.

NYCB also expanded the utilization of its float pool as part of the October 13, 20111 reduction-in-force. In this regard, following the reduction-in-force, NYCB included all branch level job classifications—that is, BMs, ABMs, BMAs and FSAs—in the float pool. By doing so, rather than being assigning a single branch to manage, which NYCB found in some cases to be inefficient, BMs and AMs oversaw operations by floating between various branches within a specific cluster. The expansion of the float pool also allowed NYCB to more effectively provide coverage for absent employees and gave NYCB the opportunity to assess employees seeking permanent management positions by offering them trial periods as floating ABMs or BMs.

NYCB employed an objective analysis to evaluate its employees in the New York area, assigning each employee a Performance Score. Employees were scored based on (1) their three most recent performance evaluations; (2) disciplinary warnings, if they received any over the last three years; (3) in the case of BMs and ABMs, branch audits; (4) languages spoken, if any; and (5) licensing, in any. After all employees received their Performance Scores, NYCB compared the results of employees with the same job title and the same status who worked within the same cluster. Based on the staffing needs in that particular cluster, the employees with the lowest scores would be let go. However, in the event an FSA had a Performance Score of 60 or greater or an ABM or BM had a Performance Score of 70 or greater, he or she would be eligible to

6

transfer. In addition, floating FSAs were compared to the other floating FSAs in their float pool region.

However, Garnett-Bishop claims that the factors used to determine employees' Performance Scores were manipulated, particularly with respect to the reliance on recent performance evaluations. In this regard, apparently senior management directed the performance evaluation scores to be lowered for the Plaintiff Donna Cappello and other female employees. Further, the Plaintiff Lynette Tiger, who was a BM, was allegedly told to give another employee a score which was different than what she thought was proper. Nevertheless, Garnett-Bishop presents no evidence establishing that any of her performance evaluations, discussed below, were manipulated, and has, in fact, stated that they represent fair assessments of her performance.

## B. The Plaintiff Garnett-Bishop's Termination

On December 2, 1991, Garnett-Bishop was hired by Roslyn Savings Bank as a full-time bank teller in its branch located in Farmingdale, New York. In 2003, when NYCB acquired Roslyn Savings Bank, Garnett-Bishop became an employee of NYCB. Three years later, in 2006, the Plaintiff was transferred to NYCB's branch located in Commack, New York, where she was promoted to the position of Assistant Branch Supervisor. Thereafter, the title of Assistant Branch Supervisor was changed to the title of BMA.

In 2009, Garnett-Bishop voluntarily transferred to a FSA position within Float Pool Region 4, which was managed by Virginia Belling, Eric Lange and Maureen Montalbano. In this position, Garnett-Bishop worked on an "as needed" basis and moved between the different branches within her float pool's region. She filled in for employees who were absent and performed various tasks, such as teller duties, opening accounts and performing sales work. Among the floating FSAs in her float pool, Garnett-Bishop was the highest paid.

7

In the years prior to the October 13, 2011 reduction-in-force, Garnett-Bishop's performance was reviewed annually. In this regard, for 2008, Garnett-Bishop earned a score of 3.55 out of five on her performance evaluation. Based on this score, Garnett-Bishop was found to have met the requirements, and according to her performance evaluator, she was an asset to NYCB. In addition, of the seven criteria considered in the performance evaluation, she was determined to have exceeded requirements for four and met requirements for three. Garnett-Bishop does not challenge this evaluation of her performance.

In 2009, Garnett-Bishop received three disciplinary warnings. First, on March 25, 2009, she received a written warning for failing to follow NYCB policies, in that she approved a $5,000 withdrawal and deposit transaction between the accounts of the same customer as a cash transaction when she should have processed the transaction as a transfer. Second, on May 21, 2009, Garnett-Bishop received another written warning for making the same error which led to her March 25, 2009 warning. Finally, on September 30, 2009, Garnett-Bishop received her third written warning for having a $100 overage in her cash-drawer.

For 2009, Garnett-Bishop's performance evaluation score was a 3.2 out of five, which meant she was meeting expectations. Concerning the seven criteria considered, she was assessed as exceeding requirements for two and meeting requirements for five. Again, Garnett-Bishop does not challenge the 2009 assessment of her performance. She also does dispute any of her 2009 disciplinary warnings.

The following year, in 2010, the Garnett-Bishop earned a score of 3.85 out of five on her performance evaluation. For this performance evaluation, only six criteria were looked at, with Garnett-Bishop being found to exceed requirements for five of the criteria and to meet requirements for the last criteria. Further, Garnett-Bishop's performance evaluator commented

that Garnett-Bishop excelled in customer service; was striving to achieve and excel at her job; and performed her responsibilities at a one hundred percent level. Once more, Garnett-Bishop does not disagree with the evaluation of her performance.

Based on the 2008, 2009 and 2010 performance evaluations and her three disciplinary warnings from 2009, Garnett-Bishop received the lowest Performance Score among floating FSAs in Float Pool Region 4. In this regard, the Performance Scores for floating FSAs in Float Pool Region 4, as well as their race, gender and birth year, are as follows:

(1) Erica Fackiener: Race—Caucasian; Gender—Female; Birth Year—1988; Performance Score—100.0
(2) Anthony Gang: Race—Caucasian; Gender—Male; Birth Year—1990; Performance Score—100.0
(3) Patricia Cognato: Race—Caucasian; Gender—Female; Birth Year—1962; Performance Score—100.0
(4) Nancy McDonough: Race—Caucasian; Gender—Female; Birth Year—1953; Performance Score—100.0
(5) Amanda Soto: Race—Hispanic; Gender—Female; Birth Year—1988; Performance Score—94.5
(6) Ann Espinoza: Race—Hispanic; Gender—Female; Birth Year—1992; Performance Score—83.5
(7) Danny Sheffied: Race—Black; Gender—Male; Birth Year—1992; Performance Score—83.5
(8) Mary Beiner: Race—Caucasian; Gender—Female; Birth Year—1957; Performance Score—75.0
(9) Michelle Feliciano: Race—Hispanic; Gender—Female; Birth Year—1977; Performance Score—75.0
(10) Kim Gentile: Race—Caucasian; Gender—Female; Birth Year—1987; Performance Score—72.25
(11) Erfanullah Syed: Race—Caucasian; Gender—Female; Birth Year—1965; Performance Score—69.50
(12) Natalie Garnett-Bishop: Race—Caucasian; Gender—Female; Birth Year—1965; Performance Score 38.75

Since Garnett-Bishop had the lowest Performance Score for floating FSAs in Float Pool Region 4, she was selected to be let go as part of the October 13, 2011 reduction-in-force. No other floating FSAs in Float Pool Region 4 were terminated.

## II. DISCUSSION

### A. Legal Standard on a Fed. R. Civ. P. 56 Motion for Summary Judgment

A party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). Material facts are those that may affect the outcome of the case. See Anderson, 477 U.S. at 248, 106 S. Ct. 2505. An issue of fact is considered "genuine" when a reasonable finder of fact could render a verdict in favor of the non-moving party. Id. In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248, 106 S. Ct. 2505). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256, 106 S. Ct. 2505. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247–48, 106 S. Ct. 2505. Rather, enough evidence must favor the non-moving party's case so that a jury could return a verdict in its favor. Id. at 248, 106 S. Ct. 2505; see also Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994) ("When no rational jury could find in

favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

**B.  As to Whether the Defendants' Motion for Summary Judgment is Premature**

The Plaintiff Garnett-Bishop first opposes the Defendants' Fed. R. Civ. P. 56 motion for summary judgment on the ground that it is premature in light of the Court's January 8, 2014 Consolidation Order.  In this regard, while discovery has ended concerning Garnett-Bishop's claims, the claims of the other plaintiffs in this consolidated action are still at the motion to dismiss stage and discovery has not yet been completed.

The Court notes that consolidation of actions pursuant to Fed. R. Civ. P. 42(a) "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." Primavera Familienstiftung v. Askin, 173 F.R.D. 115, 130 (S.D.N.Y. 1997) (quoting Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496–97, 77 L. Ed. 1331, 53 S. Ct. 721 (1933)).  However, at the same time, one of main considerations of a court when deciding whether consolidation is appropriate is "the risk of inconsistent adjudications of common factual and legal issues[.]" Augustin v. Jablonsky, 99–CV–3126 (DRH)(ARL), 2001 WL 770839, at *15 (E.D.N.Y. Mar. 8, 2001), rev'd and remanded on other grounds, 461 F.3d 219 (2d Cir. 2006) (quoting Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990), cert. denied, 498 U.S. 920, 111 S. Ct. 297, 112 L. Ed. 2d 250 (1990)).  Indeed, Fed. R. Civ. P. 42 consolidation is employed by courts in order to "promote efficiency and prevent inconsistent results." Hayes v. Williamsville Cent. Sch. Dist., 506 F. Supp. 2d 165, 172 (W.D.N.Y. 2007) (citing Fed. R. Civ. P. 42).

In this case, Garnett-Bishop is just one of many plaintiffs alleging that the process utilized by the Defendants in executing the October 13, 2011 reduction-in-force was discriminatory and violated the WARN Act and NYSLL.  As a consequence, should the Court

reach the merits of the Defendants' summary judgment motion at this juncture, the Court will inevitably make rulings on critical issues that could impact the claims of the other plaintiffs, who have not even had the opportunity to finish discovery. Indeed, these rulings may involve (1) an assessment of the process NYCB used to determine which employees to let go and (2) an analysis of the applicability of the WARN Act and the NYSLL to the October 13, 2011 reduction-in-force.

Thus, the Court cannot ignore the prejudice the other plaintiffs may be subject to if the Court were to move forward. Moreover, it appears that the Defendants would not face any discernible prejudice should the Court delay in deciding their motion for summary judgment at this time.

Of course, this is not to say that all the plaintiffs' separate claims will be treated as identical. For example, with regard to the different discrimination causes of action, the familiar burden shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) will still apply. Thus, each plaintiff will first be required to establish her own prima facie case "demonstrate[ing] that: 1) she belonged to a class protected by the statute; 2) she was qualified for the position; 3) she was subjected to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Vazquez v. Southside United Hous. Dev. Fund Corp., 06-CV-5997(NGG)(LB), 2009 WL 2596490, at *6 (E.D.N.Y. Aug. 21, 2009) (citations omitted).

However, so as to avoid inconsistent and piecemeal rulings on the October 13, 2011 reduction-in-force, the Court shall wait to resolve the Defendants' motion for summary judgment and those issues common to all plaintiffs once discovery is completed for all plaintiffs and all the

parties have had the opportunity to be heard.  See, e.g., United States v. Native Wholesale Supply Co., 08-CV-0850ASR, 2009 WL 3429803, at *7 (W.D.N.Y. Oct. 20, 2009) report and recommendation adopted, 08-CV-850A, 2010 WL 1257948 (W.D.N.Y. Mar. 26, 2010) ("So as to avoid the very real possibility of inconsistent judgments with respect to the government's motion for summary judgment [in the First Filed Action] and the relief sought . . . in the Second Filed Action (now part of the First Filed Action by reason of consolidation), this Court recommends that the government's motion for summary judgment be held in abeyance until such time as the issues raised [in the Second Filed Action] . . . are resolved.").

For these reasons, the Court denies the Defendants' Fed. R. Civ. P. 56 motion for summary judgment without prejudice and with leave to renew when all discovery is completed in the consolidated action.

### III. CONCLUSION

For the foregoing reasons, it is hereby,

**ORDERED**, that the Defendants' Fed. R. Civ. P. 56 motion for summary judgment is denied without prejudice as premature.  The Defendants may renew their motion when all discovery has been completed in this consolidated action.

**SO ORDERED.**

Dated: Central Islip, New York
September 22, 2014

                                                    _/s/ Arthur D. Spatt_
                                                   ARTHUR D. SPATT
                                             United States District Judge