**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
NATALIE GARNETT-BISHOP, et al.

Plaintiffs,

-against-

     **MEMORANDUM OF**
     **DECISION AND ORDER**
     12-CV-2285 (ADS) (ARL)

NEW YORK COMMUNITY BANCORP,
INC., et. al,

Defendants.

----------------------------------------------------------X

<u>**APPEARANCES:**</u>

**ANN WILLOUGHBY, ESQ.**
*Attorney for the Plaintiffs Natalie Garnett-Bishop, Kathleen Warshun, and Lynette Tiger*
245 Hillside Ave
Williston Park, NY 11596

**PATRICK W. JOHNSON, ESQ., P.C.**
*Attorney for the Plaintiffs Donna Cappello, Donna Berchiolli, Shannon Byrnes, Theresa Falco,*
*Leslie Morency, Marie Alexander, Marie Alexander, Katia Page, Celeste McCormack,*
*Audrey Zuckerman, Monica Ortega, Gelsomina Tierno, Jaqueline Ramos, Nansi Ghobrial, Mary*
*Ellen Cassidy, Candice Petrancosta, Addolorata Quiles*
9118 Third Ave
Brooklyn, NY 11209

**THEODORE PAVLOUNIS, ESQ., P.C.**
*Attorneys for the Plaintiffs Dee Cooper Jones, Claire Byrnes, Ilene Branfman, Geraldine*
*Collins, Helen Arniotes, Gina Decrescenzo, Samantha Zielinski, Diann Titus*
7706 13th Avenue
Brooklyn, NY 11228
    By: Andrew G. Sfouggatakis, Esq.
       Theodore Pavlounis, Esq., Of Counsel

**LITTLER MENDELSON, P.C.**
*Attorneys for the Defendants*
1100 Superior Avenue, 20th Floor
Cleveland, Ohio 44114
    By:  Amy Ventry-Kagan Esq.
       Robert M. Wolff, Esq.
       James P. Smith, Esq., Of Counsel

**SPATT, District Judge**.

Five separate actions were brought against the Defendants New York Community Bancorp, Inc., New York Community Bank Corp., Inc., and New York Community Bank ("NYCB") (collectively, the "Corporate Defendants"), as well as the Defendants Joseph Ficalora ("Ficalora"), Robert Wann ("Wann"), William DiSalvatore ("DiSalvatore") and Cynthia Flynn ("Flynn") (collectively, the "Individual Defendants.")  These actions arose from NYCB's decision to reduce its workforce on October 13, 2011 by terminating approximately 265 employees.  In this decision, all the Corporate Defendants and the Individual Defendants shall be referred to collectively as the "Defendants."

On January 8, 2014, the Court granted the Defendants' unopposed motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 42 to consolidate the five separate actions. The Court also directed the Plaintiffs in those five actions to file a consolidated complaint combining these claims and stated that the "[c]onsolidated [c]omplaint shall not assert new allegations against the Defendants."  The cases were consolidated as one action under Case Number 12–CV–2285, which was the first of the five lawsuits to be filed, and the other four cases were closed.  In addition, the Court dismissed without prejudice all pending motions with leave to renew after the Plaintiffs filed a Consolidated Complaint.

On February 7, 2014, thirty-one Plaintiffs, all of whom were employees of the Defendants whose employment was terminated, filed a consolidated complaint.  The consolidated complaint alleges, among other matters, that their terminations were the result of employment discrimination based on age, race, national origin, gender and/or disability and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the

"ADEA"); and the American With Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"). The Plaintiffs also assert a claim pursuant to the Worker Adjustment and Retraining Notification Act, 42 USC § 2101, *et seq.* (the "WARN Act") and its New York state equivalent, New York Labor Law § 860, *et seq.* (the "state WARN Act"). The Plaintiffs further assert state law causes of action against the Defendants for violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 (the "NYSHRL"), intentional infliction of emotional distress, and negligent infliction of emotional distress.

Presently before the Court are two motions. First, the Defendants move to dismiss certain of the Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(5) and (6), including: (1) claims against the Individual Defendants; (2) the Title VII retaliation claims against the Corporate Defendants; (3) the intentional infliction of emotional distress and negligent infliction of emotional distress claims against the Corporate Defendants; (4) the Plaintiffs' NYSHRL claims against the Corporate Defendants; (5) and various federal and state law claims by some of the individual Plaintiffs against the Corporate Defendants. Second, the Defendants move to strike certain documents, which were appended to the Plaintiffs' opposition brief. For the reasons set forth below, the Court grants in part and denies in part the Defendants' partial motion to dismiss. The Court denies the Defendants' motion to strike certain documents.

## I. BACKGROUND

### A. Underlying Facts

At the outset, the Court notes that the organization of the consolidated complaint makes it somewhat difficult to understand the precise nature of many of the Plaintiffs' claims. The consolidated complaint consists of ninety-two pages of factual allegations organized into the following sections: (1) facts "common to all causes of action," (2) facts common to the Plaintiff Natalie Garnett-Bishop's ("Garnett-Bishop") causes of action; (3) facts common to the Plaintiff

Kathleen Warshun's ("Warshun") causes of action; (4) facts related to the Plaintiff Lynette

Tiger's ("Tiger") causes of action; (5) facts relating to a group of seventeen plaintiffs; and (6)

facts related to a group of eleven plaintiffs. Despite this somewhat haphazard organization, the

Court draws the following facts from the Plaintiffs' consolidated complaint and construes them

in a light most favorable to the Plaintiffs. The Defendants' opening brief does not address

Garnett-Bishop's or Tiger's claims, and therefore, the Court does not address facts relevant to

their causes of action at this time.

**1. Facts Common to All Causes of Action**

NYCB is a banking institution incorporated under the laws of the State of New York and

governed by the federal banking laws of the United States (Consolidated Compl. at ¶ 8.). NYCB

is a subsidiary of New York Community Bancorp, Inc. ("Bancorp"), also referred to as New

York Community Bank Corp., Inc. (Id. at ¶ 6.) NYCB has different commercial banking

branches in New York State that, during all the relevant times, employed more than 1,000

employees. (Id. at ¶ 97.) The Plaintiffs are a group of thirty-one females formerly employed by

NYCB who are of varying ages and races. (Id. at ¶ 95.)

To evaluate its employees' job performance, NYCB branch management allegedly used

transactional surveys, which counted the number of transactions that each employee

consummated while working at an NYCB branch, as well as performance ratings. (Id. at ¶¶ 103–

104, 108–110.) These evaluations, together with an employee's disciplinary history, were used

by the NYCB's human resources department to make personnel decisions. (Id. at ¶ 108.)

On October 13, 2011, NYCB terminated more than 400 employees. Following the

termination, the Plaintiffs were told by NYCB management that their terminations were a result

of poor past performance reviews. (Id. at ¶ 102.)

Although the Plaintiffs' terminations were purportedly based on objective factors, the Plaintiffs allege that "members of management" were "instructed to lower the performance ratings of their staff which was primarily female." (Id. at ¶ 104.) The Plaintiffs further allege that these efforts reflected an "intentional" and "deliberate" attempt to replace the Plaintiffs with "younger, less experienced individuals whose compensation would be significantly less than those employees who had been terminated." (Id. at ¶ 107.)

Finally, the Plaintiffs allege that following their terminations, the Defendants "have offered and continue to offer current employees incentives to actively recruit new hires for various positions which were previously held by employees terminated on October 13, 2011." (Id. at ¶ 111.)

### 2. Facts Related to Warshun's Causes of Action

Warshun was hired by Roslyn Saving Bank on September 13, 1995 where she remained employed until her termination on October 13, 2011. (Id. ¶ 155.) Roslyn Savings Bank was acquired by Bancorp in 2003 and became a division of NYCB. (Id. at ¶ 156.)

Warshun alleges that she was "unlawfully terminated due to her gender, age and disability." (Id. ¶ 155.) In particular, Warshun alleges that "in or about 2007," she "sustained an injury" during the course of her employment at NYCB. (Id. at ¶¶ 158–159.) As a result of the injury, Warshun alleges that she had "spinal fusion surgery." (Id.) Following the surgery, she alleges that she "was restricted in her ability to climb stairs and lift objects." (Id.) She further alleges that in "2010, [Warshun] was, at her request, exclusively assigned to the drive-up banking facility located at 14 Conklin Street in Farmingdale, NY." (Id. at ¶ 162.)

Warshun further alleges that she was fifty-three years old when terminated and received a letter from the Defendant Flynn "stating that the terminations were objectively based upon

factors including recent disciplinary history, scores received in recent performance evaluations, branch audits and special skills."  (Id. at ¶ 178.).  However, Warshun alleges that her "performance was never deemed to be poor or below acceptable levels."  (Id. at ¶ 163.)

### 3. Facts Related to the Cappello Plaintiffs

The Plaintiffs condense the allegations of seventeen of the Plaintiffs into one section of the consolidated complaint.  These Plaintiffs include the Plaintiffs Donna Cappello ("Cappello"), Donna Berchiolli ("Berchiolli"), Shannon Byrnes ("Byrnes"), Theresa Falco ("Falco"), Leslie Morency ("Morency"), Marie Alexander ("Alexander"), Katia Page ("Page"), Celeste McCormack ("McCormack"), Audrey Zuckerman ("Zuckerman"), Monica Ortega ("Ortega"), Gelsomina Tierno ("Tierno"), Jaqueline Ramos ("Ramos"), Nansi Ghobrial ("Ghobrial"), Mary Ellen Cassidy ("Cassidy"), Candice Petrancosta ("Petrancosta"), Addolorata Quiles ("Quiles"), and Samantha Zielinski ("Zielinski") (collectively, the "Cappello Plaintiffs").

The Cappello Plaintiffs were all females employed by NYCB, whose employment was terminated on October 13, 2011.  (See id. at ¶¶ 201–37.)  The consolidated complaint makes clear the nature of some of the Cappello Plaintiffs' positions and corporate titles and omits this information with respect to others.  In particular, of the Cappello Plaintiffs, the Plaintiffs Cappello, Berchiolli, Byrnes, Falco, and Quiles were employed at NYCB's Howard Beach branch prior to their terminations.  Cappello was the Assistant Branch Manager at the Howard Beach branch from 2005 until her termination. (Id. at ¶ 246.)  However, the complaint does not make clear what roles or titles Berchiolli, Byrnes, Falco, or Quiles had while working at the Howard Beach branch.  The consolidated complaint also does not make clear at what branch the remaining Cappello Plaintiffs worked at or what their titles were while employed by NYCB.

The Cappello Plaintiffs make certain collective allegations of discrimination, including that: (i) they "were paid less than their male counterparts with equal seniority;" (ii) they had "at least one warning in their file with [NYCB]" prior to their terminations, but they all disputed those warnings with their "superiors" or "[NYCB's] Human Resources Division"; and (iii) "there existed prior to the October 2011 layoffs a bias and prejudice against the female employees of the Howard Beach Branch." (Id. at ¶¶ 242, 244–45, 257.)

In addition, the Cappello Plaintiffs make individual allegations of discrimination. For example, the Plaintiffs Berchiolli, Byrnes, Quiles, and Morency allege that while they were terminated, their "younger, male counterpart[s] retained [their] position[s] at the branch." (Id. at ¶ 280–283.)

Similarly, Morency alleges, among other things, that she was terminated for "refusing to lower performance scores of deserving staff who were all female." (Id. at ¶ 297.) Morency also alleges that she was told that she was ineligible for a promotion because she had been promoted in the previous year. (Id. at ¶ 303.) According to Morency, this same policy was not applied to male employees at NYCB. (Id. at ¶ 304.)

Finally, the consolidated complaint alleges that Said Salah, a male employee who was a member of management staff at the Howard Beach Branch, received a disciplinary warning, along with the Plaintiffs Cappello and Berchiolli, in connection with a March 2010 incident of "employee theft." (Id. at ¶ 341.) However, unlike Cappello and Berchiolli, Said was not terminated; rather, he received a promotion to assistant branch manager prior to the Plaintiffs' termination on October 13, 2011. (Id. at ¶ 352.)

**4. Facts Related to the Cooper Jones Plaintiffs**

The consolidated complaint also condenses the allegations of eleven Plaintiffs into one section. These Plaintiffs include: Dee Cooper Jones ("Cooper Jones"); (ii) Diann Titus ("Titus"); (iii) Claire Byrnes; (iv) Ilene Branfman ("Branfman"); Geraldine Collins ("Collins"); Hellen Arniotes ("Arniotes"); Gina Decrescenzo ("Decrescenzo"); Linda Smith ("Smith"); Ann Abbruzzese ("Abbruzzese"); Maryann Golinello ("Golinello"); and Jillian Triano ("Triano") (collectively, the "Cooper Jones Plaintiffs").

In addition to alleging their titles and when they were hired by NYCB, the Cooper Jones Plaintiffs allege facts that are largely derivative of the allegations common to all causes of action. Therefore, the Court does not recount them here.

## II. DISCUSSION

### A. As to Whether the Claims and Parties Omitted From the Consolidated Complaint Should be Dismissed

As an initial matter, the Defendants argue that several of the Plaintiffs and some of their claims are not properly before the Court as the Plaintiffs either failed to include them in their consolidated complaint or they were included in the consolidated complaint in violation of a previous court order. These claims include: (1) the Plaintiffs' Title VII retaliation claims against the Corporate Defendants; (2) the claims of the Plaintiffs Abbruzzese, Golinello, Smith, and Triano; (3) twenty-three new claims asserted in the consolidated complaint, which were not asserted in the Plaintiffs' original complaints prior to consolidation; (4) claims against the Individual Defendant Flynn; and (5) Diann Titus's claims. The Court agrees.

#### 1. The Plaintiffs' Title VII Retaliation Claims Against the Corporate Defendants

The Plaintiffs' Sixth Cause of Action alleges that the "Defendants Joseph Ficalora, Robert Wann, William DiSalvatore and Cynthia Flynn, by their course of conduct violated and

continue to violate 42 U.S.C. Section 2000e *et seq.*, by discriminatorily and systematically

retaliating against plaintiffs in their termination and in their seeking new employment

elsewhere." (Consolidated Compl. at ¶¶ 425–28.)  The cause of action does not refer to or make

any allegations regarding the Corporate Defendants.

In their memorandum of law, the Plaintiffs concede this "oversight" and asks the Court

for leave to amend their consolidated complaint pursuant to Fed. R. Civ. P. 15.  (The Pls.' Opp'n

Memo of Law, at 16.)  Fed. R. Civ. P. 15 provides that a party may "amend it pleading once as a

matter of course within . . . 21 days after serving it."  Where the 21 day period has passed, "a

party may amend its pleading only with the opposing party's written consent or the court's leave.

The court should freely give leave when justice so requires."  Id.

The Plaintiff did not previously seek leave of the Court to amend their consolidated

complaint to add a claim against the Corporate Defendants for Title VII retaliation.  Moreover,

numerous courts have held that a "bare request to amend a pleading" contained in a brief, which

does not also attach the proposed amended pleading, is improper under Fed. R. Civ. P. 15.  See,

e.g., Curry v. Campbell, No. 06-CV-2841 (DRH), 2012 WL 1004894, at *7 (E.D.N.Y. Mar. 23,

2012) ("To satisfy the requirement of particularly in a motion to amend a pleading, the proposed

amended pleading must accompany the motion so that both the Court and opposing parties can

understand the exact changes sought.") (quoting AT & T Corp. v. Am. Cash Card Corp., 184

F.R.D. 515, 521 (S.D.N.Y. 1999)); see also Evans v. Pearson Enterprises, Inc., 434 F.3d 839,

853 (6th Cir. 2006) ("We agree with several of our sister circuits that a bare request in an

opposition to a motion to dismiss — without any indication of the particular grounds on which

amendment is sought . . . — does not constitute a motion within the contemplation of Rule

15(a)") (quoting Confederate Mem'l Ass'n, Inc. v. Hines, 995 F.2d 295, 299 (D.C. Cir. 1993)).

Under these circumstances, courts generally hold the motion to dismiss in abeyance pending the filing of the proposed pleading or deny the motion to amend without prejudice. <u>AT & T Corp. v. Am. Cash Card Corp.</u>, 184 F.R.D. 515, 521 (S.D.N.Y. 1999) ("Where the proposed amended [pleading] does not accompany the motion to amend, the Court may hold the motion in abeyance pending the filing of that proposed [pleading], or the Court may deny the motion without prejudice." (quoting <u>Smith v. Planas</u>, 151 F.R.D. 547, 550 (S.D.N.Y. 1993) (alteration in original).

However, the decision as to whether to grant leave to amend is within the sound discretion of the courts, and courts can deny leave to replead where the proposed amendment would be "futile." <u>Herbert v. Delta Airlines</u>, No. 12-CV-01250 (SLT), 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014). Here, the Court finds that any amendment would be futile because the Plaintiffs have failed to state a claim for retaliation upon which relief can be granted.

To state a claim for retaliation under Title VII or the NYSHRL, a plaintiff must allege facts that would tend to show that: "(1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." <u>Id.</u> (citing <u>Patane v. Clark</u>, 508 F.3d 106, 115 (2d Cir. 2007)) Protected activities include "oppos[ing] an act or practice of discrimination based upon race, color, religion, sex, national origin, age or disability" or "participat[ing] in any manner in an investigation, proceeding or hearing under [Title VII]." <u>Id.</u> (citing <u>Troccoli v. Target Store No. 1108</u>, No. 13–CV–00627 (SJF), 2013 WL 2023983, at *3 (E.D.N.Y. May 13, 2013)).

Most of the Plaintiffs fail to make any allegation that their terminations were the result of retaliation.  See id. ("[The plaintiff's] amended complaint does not even suggest he engaged in a protected activity. [The plaintiff] therefore fails to state a claim for retaliation under Title VII.")

 The Plaintiffs that do refer to retaliation in the consolidated complaint do so in a wholly conclusory fashion.  For example, the Plaintiff Morency suggests that she was terminated because she "complain[ed] that Regional Management failed to recognize and/or acknowledge her efforts in branch performance while those of her male counterparts were acknowledged." (Consolidated Compl. at ¶¶ 298, 305.)  Similarly, the Plaintiff Alexander alleges that she was terminated in retaliation for making "complaints to Human Resources questioning her salary which was not in line with younger, less experienced males."  (Id. at ¶ 306.)  The Plaintiff McCormack also alleges that she was terminated for failing to discipline an employee who "had disability issues."  (Id. at 315.)  Alexander, McCormack, and Morency do not provide any facts, such as who they complained to and when they made the alleged complaints, which could plausibly give rise to an inference that their terminations were a result of a retaliatory action by NYCB.  Troccoli v. Target Store No. 1108, No. 13–CV–00627 (SJF), 2013 WL 2023983, at *3 (E.D.N.Y. May 13, 2013) ("There are no factual allegations in plaintiff's complaint from which it may be inferred . . .  that a protected characteristic played any role, no less a substantial role, in the conduct of which plaintiff complains.")

Moreover, several of the Plaintiffs fail to plead facts that could plausibly suggest that they were engaging in a "protected activity."  For example, the Plaintiff Alexander alleges that she was terminated in "retaliation for contacting a lawyer for unfair termination."  (Consolidated Compl. at ¶ 308.)  Similarly, the Plaintiffs Cappello and Zielinski allege that they were terminated for "disputing a disciplinary warning[s]" related to an employee theft.  (Id. at ¶¶ 338,

360.) Similarly, the Plaintiff Cassidy alleges that she was terminated in retaliation for complaining to human resources about certain Spanish speaking employees due to "absenteeism," which led to accusations that she was "prejudiced." (Id. at ¶ 319.) As these complaints refer to non-discriminatory actions, as opposed to practices made unlawful under the employment discrimination statutes, they do not plausibly suggest that these plaintiffs were engaging in "protected activities." See Troccoli, 2013 WL 2023983 at *3 ("Absent any allegation that plaintiff engaged in a protected activity, i.e., opposed any discriminatory act or practice made unlawful under the employment discrimination statutes, the complaint fails to state a claim for retaliation under any of the employment discrimination statutes.")

Since the Plaintiffs fail to state a claim for retaliation under any of the employment discrimination statutes, the Court finds that it would be "futile" to grant the Plaintiffs leave to file an amended complaint asserting claims against the Corporate Defendants. Accordingly, the Court denies the Plaintiffs' motion to amend its complaint to add Title VII retaliation claims against the Corporate Defendants. Therefore, the only remaining Title VII retaliation claims are those made against the Individual Defendants, which, as set forth below, fail as a matter of law.

**2. The Claims of the Plaintiffs Abbruzzese, Golinello, Smith and Triano**

The Defendants also argue that the Plaintiffs Abbruzzese, Golinello, Smith and Triano claims should be dismissed because the Plaintiffs have added them to their consolidated complaint in clear contravention of a court order and without properly seeking leave to amend.

Prior to the case being consolidated, on June 24, 2013, the Cooper Jones Plaintiffs in Case No. 13–CV–1161 (the "Cooper Jones Action") – without leave of Court – filed an Amended Complaint (Dkt. No. 22) attempting to add Plaintiffs Abbruzzese, Golinello, Smith and Triano. In response, on July 3, 2013, the Defendants filed a motion to strike the Cooper Jones

Plaintiffs' amended complaint. (Dkt. No. 27). On August 16, 2013, the Plaintiffs Abbruzzese, Golinello, Smith and Triano filed a motion seeking leave of the court to amend their complaint to, among other things, add the Plaintiffs Abbruzzese, Golinello, Smith and Triano. (Dkt. No. 32).

On January 8, 2014, the Court closed the Cooper Jones action, granted the Defendants' motion to consolidate it under Case Number 12–CV–2285, and dismissed the Cooper Jones Plaintiffs' motion seeking leave to amend their Complaint without prejudice and with leave to renew after the Plaintiffs filed the consolidated complaint. (Dkt. No. 43.) The Plaintiffs did not renew their motion to amend the consolidated complaint to add the Plaintiffs Abbruzzese, Golinello, Smith and Triano. Instead, without leave of the Court, the Plaintiffs added Abbruzzese, Golinello, Smith and Triano to their consolidated complaint.

The Plaintiffs offer no counterargument in response to the Defendants' assertion that Abbruzzese, Golinello, Smith and Triano are not proper parties to the consolidated complaint. See e.g., Moccio v. Cornell Univ., No. 09 CIV. 3601 (GEL), 2009 WL 2176626, at *4 (S.D.N.Y. July 21, 2009) ("Whatever the merit of this argument, plaintiff has abandoned the 'false light' claim, as her motion papers fail to contest or otherwise respond to defendants' contention."); Thomas v. Atl. Express Corp., No. 07 CIV. 1978 (SCR), 2009 WL 856993, at *2 (S.D.N.Y. Mar. 31, 2009) (Dismissing a plaintiff's claims with prejudice where "[i]n his opposition, [the plaintiff] failed to respond to Atlantic's argument that his due process claim should be dismissed, and therefore that claim is deemed abandoned").

Even if the Plaintiffs had properly requested leave to amend the consolidated complaint to add Abbruzzese, Golinello, Smith and Triano, the Court denies their request as "futile." Herbert, 2014 WL 4923100, at *5 ("Nonetheless, courts may deny leave to replead where

amendment qualifies as futile.")  The only allegations in the complaint relating to Abbruzzese, Golinello, Smith and Triano are their dates of hire, ethnicities, race, and conclusory allegations that they were "wrongfully terminated by Defendant NYCB."  These allegations, without more, do not state a claim for discrimination under any of the employment statutes under which the Plaintiffs make their claims.  See *infra* Section II.E (2).

Accordingly, the Court dismisses the claims of the Plaintiffs Abbruzzese, Golinello, Smith and Triano with prejudice.

### 3. Twenty-three New Claims Added to the Plaintiffs' Consolidated Complaint Without Leave of the Court

In the Court's January 8, 2014 consolidation order, the Court ordered the Plaintiffs to file "a Consolidated Complaint incorporating the claims of the remaining twenty-six Plaintiffs.  <u>The Consolidated Complaint shall not assert new allegations against the Defendants</u>."  (Dkt. No. 43) (emphasis added).  Despite the Court's order, the Plaintiffs filed, without leave of the Court, a consolidated complaint in which twenty three Plaintiffs assert claims that they did not assert in their original complaints.

These newly-asserted claims, include:

- the Cappello Plaintiffs' claims for (1) age discrimination under the ADEA; (2) Title VII gender discrimination; (3) Title VII race discrimination; and (4) disability discrimination under the ADA;

- the Plaintiffs Arniotis, Branfman, Claire Byrnes, Collins and Decrescenzo's claims for (1) Title VII race and national origin discrimination and (2) disability discrimination under the ADA; and

- the individual Plaintiff Cooper Jones's ADA discrimination claim.

The Plaintiffs concede that these claims were not asserted in their original complaints but maintain that the Court should grant leave to amend.  To support this argument, the Plaintiffs do not cite to legal authority but rather state that the court should excuse their "errors" because "[i]n

consolidating multiple lengthy complaints containing the aggregate claims of more than 30 individuals, spanning more than 90 pages, certain oversight is nearly unavoidable." (The Pls.' Memo of Law in Opp'n, at 20.)

To the extent the Plaintiffs requests the court for leave to amend their consolidated complaint, the Court denies the request for two reasons. First, as discussed above, a plaintiff cannot amend his complaint by making "a bare request in an opposition to dismiss." <u>Confederate Mem'l Ass'n, Inc. v. Hines</u>, 995 F.2d 295, 299 (D.C. Cir. 1993) ("We agree with several of our sister circuits that a bare request in an opposition to a motion to dismiss — without any indication of the particular grounds on which amendment is sought . . . , does not constitute a motion within the contemplation of Rule 15(a)."); <u>see also</u> <u>Curry v. Campbell</u>, No. 06-CV-2841 (DRH), 2012 WL 1004894, at *7 (E.D.N.Y. Mar. 23, 2012) ("To satisfy the requirement of [particularity] in a motion to amend a pleading, the proposed amended pleading must accompany the motion so that both the Court and opposing parties can understand the exact changes sought.").

Second, the Court's January 8, 2014 consolidation order clearly stated that the Plaintiffs' "[consolidated] [c]omplaint shall not assert new allegations against the Defendants." (emphasis added). Therefore, the Plaintiffs new claims are in direct contravention of that order. Accordingly, the Court dismisses with prejudice the Plaintiffs' newly-added claims. <u>See</u> <u>Tasini v. AOL, Inc.</u>, 505 Fed App'x 45, 48 (2d Cir. 2012) ("In light of this deferential standard of review, and the fact that plaintiffs already had an opportunity to amend their original Complaint in response to a motion to dismiss, we cannot say that the District Court abused its discretion in dismissing the Amended Complaint with prejudice.").

### 4. Diann Titus's Claims

The Plaintiffs consolidated complaint lists Diann Titus as a Plaintiff. However, on January 15, 2014, Titus filed a stipulation of voluntary dismissal. (Dkt. No. 47). Accordingly, the Court dismisses her claims with prejudice.

### 5. Claims Against the Individual Defendant Flynn

The Plaintiffs concede that they fail to allege causes of action against the Defendant Flynn but nevertheless insist that claims against her should not be dismissed because the Plaintiffs allege – for the very first time in their brief – that "certain employees were told that she played a major role in the mass termination." (The Pls.' Memo of Law in Opp'n, at 20.)

However, in ruling on a 12(b)(6) motion, the Court cannot consider allegations contained solely in a legal brief or memoranda that were not substantiated by documents quoted in, attached to, or relied upon in a party's pleadings. See Friedl v. City of New York, 210 F.3d 79, 84 (2d Cir. 2000) ("[A] district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda . . . in ruling on a 12(b)(6) motion to dismiss."); see also Walia v. Napolitano, 986 F. Supp. 3d 169, 184 (E.D.N.Y. 2013) ("[T]he Plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.") (Spatt, J.); McGown v. City of New York, 09 CIV 8646 (CM), 2010 WL 3911458, at *4 (S.D.N.Y. Sept. 9, 2010) ("In deciding a motion to dismiss, this Court may consider the full text of documents that are quoted in or attached to the complaint, or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit.") (citation omitted).

The Plaintiffs do not point to any documents relied on in their pleadings to substantiate their claims relating to the Defendant Flynn. Therefore, the Court dismisses with prejudice the Plaintiffs' claims against the Defendant Flynn.

**B. Legal Standard for Motion to Dismiss Pursuant to 12(b)(5) and 12(b)(6)**

The Court now considers the Defendants' partial motion to dismiss the Plaintiffs' remaining claims.

### 1. Motion to Dismiss Pursuant to 12(b)(5)

On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient. Khan v. Khan, 360 Fed. App'x 202, 203 (2d Cir. 2010). Where a court has not conducted a "full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." Colvin v. State Univ. College at Farmingdale, No. 13–CV–3595 (SJF), 2014 WL 2863224, at * 12 (E.D.N.Y. June 19, 2014) (internal quotation marks and citations omitted). The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." Id. However, a court "will not draw argumentative inferences in the plaintiff's favor." Tarsavag v. Citic Trust Co., Ltd., 3 F. Supp. 3d 137, 143 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

"Similar to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, in considering a motion to dismiss pursuant to 12(b)(5) for insufficient service of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d at 387 (S.D.N.Y. 2002).

To make "a prima facie showing," the plaintiff must aver facts that, "if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." Id.; (internal quotation marks and citations omitted). For instance, a properly filed affidavit of service by a plaintiff is *prima facie* evidence that service was properly effected. Colvin, 2014 WL 2863224 at

*14. However, conclusory statements by a plaintiff are insufficient to "overcome a defendant's sworn affidavit that he was not served." Darden, 191 F. Supp. 2d 382 at 387.

Under Fed. R. Civ. P. 4(e), service may be effected on an individual by the following methods:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(1)-(2).

Pursuant to Rule 4(e)(1), the Plaintiffs may also effect service on the Individual Defendants by following New York law. Pursuant to New York Civil Practice Laws and Rules ("CPLR") 308(2), a natural person may be served by:

> delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" . . . within twenty days of [the delivery].

N.Y. C.P.L.R. 308(2). "New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a clear identification of the work performed by her within that place of business." Warshun v. New York Community Bancorp, Inc., 957 F.Supp.2d 259, 266 (E.D.N.Y. 2013) (Spatt, J.). "For the purpose of service of process, a defendant can have more than one 'actual place of business.'" Id. (citations omitted). Failure to comply with

18

the delivery and mail requirements of CPLR 308(2) will result in dismissal of the action for lack of personal jurisdiction.  Stop & Shop Supermarket Co. LLC v. Goldsmith, No. 10–CV–3052 (KMK), 2011 WL 1236121, at *4 (S.D.N.Y. Mar. 31, 2011) (collecting cases).

In addition, Fed. R. Civ. P. 4 and CPLR 308(2) require that the Plaintiff file an affidavit of service with the court.  However, New York courts diverge as to whether the failure to file an affidavit of service with the court is itself a jurisdictional defect requiring dismissal.  Id. at *4 ("New York courts are somewhat less clear on the jurisdictional status of the requirement that proof of service be filed, and ten days pass thereafter, before service is "complete."); see also id. (holding that "[t]he inescapable implication is that prior to the filing of proof of service, service under § 308(2) is not 'complete,' and is therefore not 'proper' within the meaning of § 1441(b)"); cf. Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003) ("Moreover, both federal and state courts have found that even the complete 'failure to file proof of service is a mere irregularity, non-jurisdictional in nature, which may be corrected by an order *nunc pro tunc*.'").

Under Fed. R. Civ. P. 4(m), if service is not properly effected "within 120 days after the complaint is filed," the court must "dismiss the action without prejudice against that defendant or order that service be made within a specified time." However, if the plaintiff, shows "good cause for the failure," the court "must extend the time for service for an appropriate period."  Id. "Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control."  Purzak v. Long Island Housing Servs., Inc., Nos. 12–cv–1747 (JFB), 2013 WL 5202711, at *4 (E.D.N.Y. Sept. 13, 2013) (finding good cause due to the plaintiff's affidavit citing her husband's serious injury and that her daughter was undergoing cancer treatments.)

However, a court, may, in its discretion, extend the time to serve the defendant even if the plaintiff fails to show good cause.  DeLuca v. AccessIT Group, Inc., 695 F. Supp. 2d 54, 65 (S.D.N.Y. 2010).  In determining whether a discretionary extension is appropriate in the absence of good cause, a court considers the following four factors: "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service."  Id. (citations omitted).

### 2.  Motion to Dismiss Pursuant to 12(b)(6)

To survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  In particular, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted); Luna v. N. Babylon Teacher's Org., 13-CV-6308 ADS WDW, 2014 WL 1378816 (E.D.N.Y. Apr. 7, 2014) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (citing Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)) .

The "plausibility standard" requires the complainant to plead facts with more than a "sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678, 683 (finding that the plaintiff's complaint asserting claims pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) against high level government officials failed the plausibility standard where the complaint failed to allege facts of the officials' discriminatory states of mind); see also Twombly, 550 U.S. at 555, 565–67 (holding that the plaintiffs' assertion of an unlawful agreement was a "legal conclusion" and was not entitled to the assumption of truth, while the plaintiffs' non-conclusory allegation of parallel conduct did not meet the "plausibility standard" as it was more likely explained by lawful behavior).

**C. As to Whether the Defendants' Motion to Strike Should be Granted and Whether Documents Appended to the Plaintiffs' Opposition Brief Should be Considered**

The Defendants move separately to strike a number of the exhibits which the Plaintiffs attached to their brief.  (Dkt. No. 73.)  The Defendants concede that the EEOC charges and EEOC determination letters appended to the Defendants' brief can be considered by the Court in considering a motion to dismiss.  However, the Defendants argue that the other documents attached to the Plaintiffs' Memorandum of Law, including affidavits signed by the Plaintiffs, receipts for service of process, and the EEOC Intake Questionnaires, should not be considered by the Court as they were not incorporated by reference in the consolidated complaint or integral to the consolidated complaint.  Based on these arguments, the Defendants move separately for an order striking these exhibits.

Motions to strike are governed by Fed. R. Civ. P. 12(f), which provides, in relevant party," that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Dekom v. New York, 12-CV-1318 (JS), 2013

WL 3095010, at *6 (E.D.N.Y. June 18, 2013) (citing Fed. R. Civ. P. 12(f)) (emphasis added). Fed. R. Civ. P. 7(a) defines a "pleading" as a: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."

The Plaintiffs' memorandum of law and the exhibits attached to it are not "pleadings" under Fed. R. Civ. P. 7. Therefore, the Defendants cannot make a motion to strike exhibits to a brief under Fed. R. Civ. P. 12(f). See, e.g., Spiteri v. Russo, 12-CV-2780 (MKB), 2013 WL 4806960, at *64 (E.D.N.Y. Sept. 7, 2013) ("The Attorney Defendants' motions to dismiss are not pleadings, and therefore, Plaintiff cannot properly strike portions of the Attorney Defendants' motions to dismiss."); Dekom v. New York, 12-CV-1318 (JS), 2013 WL 3095010, at *6 (E.D.N.Y. June 18, 2013) ("As Plaintiffs are not seeking to strike pleadings, but rather briefs, Plaintiffs' motions must be [denied]."); Burns v. Bank of Am., 03 CIV.1685 (JCF), 2007 WL 1589437, at *11 (S.D.N.Y. June 4, 2007) ("[T]he reply brief and accompanying materials of which the plaintiffs complain is not a pleading, and thus is not properly the subject of a motion under Rule 12(f).")). Therefore, the Court denies the Defendants' motion to strike these exhibits.

However, the Court agrees with the Defendants that some of the documents appended by the Plaintiffs to their memorandum of law should not properly be considered in determining a motion to dismiss. When presented with matters outside of the pleadings in connection with a motion to dismiss, the court has two options: "exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment." Johnson v. Levy, 812 F. Supp. 2d 167, 177 (E.D.N.Y. 2011) (internal quotation marks and citations omitted).

Where, as here, the Court decides to "exclude the additional material" instead of converting the motion to one for summary judgment, the Court should only consider the complaint, any written instrument attached to the complaint as exhibits, or any documents incorporated in the complaint by reference. <u>Rothman v. Gregor</u>, 220 F.3d 81, 88–89 (2d Cir. 2000). However, even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint. <u>Id.</u> "[T]o be integral to a complaint," the other party must have had (1) "actual notice of the extraneous information," (2) "relied upon the documents in framing the complaint," and (3) "ma[d]e a clear, definitive, and substantial reference to the documents." <u>Johnson v. Levy</u>, 812 F. Supp. 2d 167, 177 (E.D.N.Y. 2011) (internal quotation marks and citations omitted). However, the Second Circuit has held, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." <u>Sobon v. Horizon Eng'g Assocs., LLP</u>, No. 5:13-CV-1431 (GTS), 2014 WL 4889340, at *7 (N.D.N.Y. Sept. 30, 2014) (quoting <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010)).

It is also well-settled that a court may consider "matters of which judicial notice may be taken" when deciding a motion to dismiss. <u>Deylii v. Novartis Pharm. Corp.</u>, No. 13-CV-06669 (NSR), 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014) (<u>citing Leonard F. v. Israel Discount Bank of New York</u>, 199 F.3d 99, 107 (2d Cir.1999)). The Court may take judicial notice of "public documents on a motion to dismiss to determine whether claims are barred by prior litigation." <u>Id.</u> (citation omitted).

Here, the Court will not consider any affidavits, receipts, and letters not referenced in or associated with the EEOC charge or intake questionnaires. This especially true in this case,

where the Plaintiffs attached affidavits to their opposition brief solely for the purpose of refuting facts alleged in the Defendants' brief. Therefore, these affidavits would require credibility assessments and weighing of the evidence, which is not appropriate on a motion dismiss. See Johnson, 812 F. Supp. 2d at 176 ("There is no basis for the Court to consider the affidavits of Jay Levy, Diane Levy, and Sue Campbell, the 51 Smith Street L.L.C. Operating Agreement, or the Johnsons' Credit Report, which are attached solely for the purpose of refuting the facts alleged in the complaint and would require credibility assessments and weighing of the evidence, which is not appropriate on a motion to dismiss.")

However, when deciding a 12(b)(6) motion to dismiss, courts have routinely considered EEOC intake questionnaires signed by the plaintiffs and letters signed by the plaintiffs which were submitted with the EEOC intake questionnaires or the EEOC Charge. See, e.g., Jackson v. Elmhurst Hosp. Ctr., No. 10-CV-5248 (RRM), 2012 WL 868965, at *1 n.2 (E.D.N.Y. Mar. 14, 2012) ("The facts are taken from the complaint, the considerable set of documents attached by plaintiff to the complaint and an Equal Employment Opportunity Commission Intake Questionnaire filed by plaintiff with the EEOC and submitted as part of plaintiff's opposition to the current motion."); Morgan v. NYS Atty. Gens.' Office, No. 11 CIV. 9389 (PKC), 2013 WL 491525, at *7 (S.D.N.Y. Feb. 8, 2013) ("Although Morgan does not attach this filing to the Amended Complaint, defendants, in support of their motion to dismiss, submit both an EEOC Intake Questionnaire, signed by Morgan on May 5, 2011 . . . . [T]he Court properly considers these documents without converting defendants' motion to one for summary judgment because these documents are 'integral to the complaint.'"); Evans v. Excellus Health Plan, Inc., No. 6:11-CV-1248 (LEK), 2012 WL 3229292, at *3 (N.D.N.Y. Aug. 6, 2012) ("Therefore, the Court may properly consider public documents as well as documents filed with the EEOC, such as

Plaintiff's Intake Questionnaire and the Charge Notice."); <u>Price v. City of New York</u>, 797 F. Supp. 2d 219, 224 (E.D.N.Y. 2011) ("Because the Intake Questionnaire and attachments are integral to Plaintiff's complaint, the court properly considers them here.").

Accordingly, in resolving the Defendants' partial motion to dismiss, the Court will consider the Plaintiffs' signed EEOC Intake Questionnaires and the letters signed by the Plaintiffs attached to them, as well as the EEOC Charge, and the EEOC determination letter.

**D. As to Whether the Plaintiffs' Claims Against the Individual Defendants Should be Dismissed**

With respect to the Plaintiffs' claims against the remaining three Individual Defendants — namely, Ficalora, Wann, and DiSalvatore — the Defendants argue that: (1) all of the Plaintiffs' claims against them should be dismissed because the Court lacks personal jurisdiction over the Individual Defendants; (2) the Plaintiffs' federal claims against them fail as a matter of law as there is no individual liability under Title VII, the ADEA, the ADA, and the federal/state WARN statutes; and (3) the Plaintiffs' NYSHRL claims against them fail as a matter of law because the Plaintiffs failed to plead facts showing that the Individual Defendants are subject to liability under that statute. The Court agrees and dismisses the Plaintiffs' federal claims and NYSHRL claims against the Individual Defendants with prejudice.

**1. As to Whether the Court Has Personal Jurisdiction Over the Individual Defendants**

The Defendants contend that this Court lacks personal jurisdiction over the Individual Defendants because they were not properly served under either the Fed. R. Civ. P. 4(e) or CPLR 308(2).

The Plaintiffs contend that service of process was sufficient pursuant to Fed R. Civ. P. 4(e)(2) because, on February 28, 2013, the Plaintiffs delivered the complaint and summons to

"Angela Manetta," a paralegal at NYCB's Westbury office, who "reported herself to be an authorized agent to accept legal documents on behalf of each individually named defendant." (The Pls.' Opp'n Memo of Law, at 8.)  In the Plaintiffs' brief, they cite to a "cover page" signed by Manetta and "proofs of service" purportedly attached to their brief.  (Id.)  However, the Plaintiffs did not file a proof of service or attach these documents to their brief.  Therefore, the Court cannot rely on these conclusory statements as proof that Ms. Manetta was authorized to accept service on behalf of the Defendants.  See Darden, 11291 F. Supp. at 387 ("Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served.")

The Plaintiffs further contend that they properly served the Defendants DiSalvatore, Ficalora, Wann by leaving copies of the summons and complaint at their "residences" and point to putative "affidavits of service annexed hereto."  In the 400 pages of exhibits appended to the Plaintiffs' brief, the Court was not able to identify any affidavits of service with respect to the Defendant DiSalvatore.  As part of Exhibit 19, the Plaintiff attached a process server's invoice and two purported affidavits of service stating that, on May 13, 2013, a copy of a summons and complaint filed by the Plaintiff Zielinski was left at their residence with Wann and Ficalora's spouses. The affidavits of service appear to apply to the complaint filed by the Plaintiff Zielinski against the Individual Defendants under Case Number 13-CV-2228, prior to her case being consolidated by this Court on January 8, 2014.  Zielinski did not file these affidavits of service in the original action or in the consolidated action prior to appending them to his brief.

The Court will not consider a process server's invoice as proof of service because, under Fed. R. Civ. P. 4(1), proof of service "must be by the server's affidavit."  However, it is not clear whether in the 12(b)(5) context, as in the 12(b)(6) context, the Court should consider an "affidavit of service," like those filed by the Plaintiffs here, which was not filed separately but,

26

rather, appended to a party's brief in opposition to a motion to dismiss. Cf. Adams v. Crystal City Marriott Hotel, No. 02 CIV.10258 (PKL), 2004 WL 744489, at *3 (S.D.N.Y. Apr. 6, 2004 ("When a party submits additional evidence to the Court in connection with a motion to dismiss [pursuant to 12(b)(6), the Court must convert the motion to dismiss into a motion for summary judgment or exclude the extraneous documents from consideration.") The Court declines to resolve the question in the instant case because, as set forth below, the Court finds that the Plaintiffs failed to state claims against the Individual Defendants.

### 2. As to Whether the Plaintiffs' Federal Claims Against the Individual Defendants Fail as a Matter of Law

The Defendants argue that the Plaintiffs' federal claims against the Individual Defendants under the ADEA, Title VII, and the ADA are frivolous and fail as a matter of law because there is no individual liability under these statutes. The Court agrees.

It is well-established that the ADEA, ADA, Title VII, and the federal and state WARN Acts "do not provide for individual liability; rather, only against the employer." Warshun v. New York Cmty. Bancorp, Inc., 957 F. Supp. 2d 259, 267 (E.D.N.Y. 2013) (Spatt, J.) (citing Patterson v. Cnty. of Oneida, 375 F.3d 206, 221 (2d Cir. 2004)); see id. ("Therefore, the Court finds that the New York WARN Act also does not provide for individual liability.") (citing Ferrer v. Citigroup Global Markets, Inc., 09–CV–5095 (NGG), 2011 WL 1322296, at *5 n. 5 (E.D.N.Y. Mar. 31, 2011)); see also Vargas v. Reliant Realty, 13 CIV. 2341 (PGG), 2014 WL 4446165, at *9 (S.D.N.Y. Sept. 9, 2014) ("Because the Court of Appeals['s] analysis [in Tomka] clearly precludes individual liability under the ADA or Title VII, plaintiff fails to state a claim against individual defendant[ ] [Taylor].") (internal quotation marks and citations omitted); Castro v. City of New York, 10-CV-4898 (NG), 2014 WL 2582830, at *5 (E.D.N.Y. June 5, 2014) ("In this Circuit, it is now well-settled that there is no individual liability under the retaliation

provision of the ADA.") (citing <u>Spiegel v. Schulmann</u>, 604 F.3d 72, 79 (2d Cir. 2010) (per curiam)).

In response, the Plaintiffs erroneously rely on <u>Patterson v. County of Oneida N.Y.</u>, 375 F.3d 206, 221 (2d Cir. 2004). There, the Court *explicitly* held that "individuals are <u>not</u> subject to liability under Title VII" and, as such, granted summary judgment with respect the plaintiff's claims against the individual defendants. <u>Id.</u> (emphasis added) ("Before reaching the substance of [the plaintiff's] Title VII claim for unlawful termination, we note that 'individuals are not subject to liability under Title VII.'") (citation and internal quotation marks omitted). The Plaintiffs also rely on <u>Vogt v. Greenmarine Holdings</u>, 318 F. Supp. 2d 136 (S.D.N.Y. 2004), wherein the court held that the plaintiffs had alleged enough facts against "investment companies" to survive a motion to dismiss with respect to their WARN Act claims. There, the plaintiffs did not bring claims against individual defendants, and therefore the Court finds this case not relevant to the instant case.

Finally, the Plaintiffs make a policy argument that the Individual Defendants should be held liable in this case because they allege that the Defendants "controlled the ultimate decision to reduce the workforce" and the October 13, 2011 termination action had a "mass effect" on the Plaintiffs. The Court declines to consider the Plaintiffs' public policy argument, which is devoid of any authority and contrary to well-established Second Circuit precedent. <u>See</u> <u>Ayco Co., L.P. v. Frisch, 1:11-CV-580 (LEK)</u>, 2012 WL 42134, at *11 n. 7 (N.D.N.Y. Jan. 9, 2012) ("These cases provide no legal support for Defendants' public policy arguments and the Court therefore does not consider them.")

Accordingly, the Court dismisses with prejudice the Plaintiffs' federal claims and its state WARN Act claim against the Individual Defendants.

### 3. NYSHRL Claims

The Defendants argue that the Plaintiffs' NYSHRL claim against the Individual Defendants should be dismissed because the Plaintiffs fail to allege facts that the Individual Defendants were "employers" under Section 296 of the NYSHRL and fail to allege facts that the Individual Defendants aided and abetted violations under the NYSHRL. The Court agrees with respect to the Defendants Wann and DiSalvatore, but not as to the Defendant Ficalora. However, the Court finds the Plaintiffs' NYSHRL claim against Ficalora also fails as a matter of law. As such, the Court dismisses with prejudice the Plaintiffs' NYSHRL claims against the Defendants Wann, DiSalvatore, and Ficalora.

### a. Legal Standard

Section 296(1) of the NYSHRL makes it unlawful for an "employer" to "discharge from employment" or "discriminate against such individual in compensation or in terms . . . of employment" on the basis of, among other things, an individual's "age, race, creed, color, national origin, sexual orientation, military status, sex, disability[.]" N.Y. Exec. Law § 296 (McKinney). "[C]laims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." Anand v. New York State Dep't of Taxation & Fin., 10-CV-5142 (SJF), 2012 WL 2357720, at *10 (E.D.N.Y. June 18, 2012). However, unlike in the Title VII context, an individual can be subject to liability under the NYSHRL if she qualifies as an "employer" or she "aided and abetted" the alleged discriminatory action. Id.

An individual qualifies as an "employer" when that individual has "an ownership interest in the relevant organization or the power to do more than carry out personnel decisions made by others." Id. (citing Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 57 (2d Cir. 2012)) (internal quotation marks omitted). Courts have found that allegations of a defendant's corporate title,

without more, are not enough to show that the defendant has the power "to do more than carry out personnel decisions"; rather, courts have required that plaintiff make specific allegations that a defendant had independent authority over personnel decisions, such as hiring, pay, schedule or termination. See Dasrath v. Stony Brook Univ. Med. Ctr., 965 F. Supp. 2d 261, 272 (E.D.N.Y. 2013) (finding that individual defendants were not "employers" within the meaning of NYSHRL where "[t]he allegations in the amended complaint, even if true, demonstrate only that [two of the defendants] had the power to supervise [the] plaintiff in his daily duties and to evaluate his performance, not that they had the power to independently carry out personnel decisions regarding him, such as his rate of pay, schedule or termination"); Maher v. Alliance Mortgage Banking Corp., 650 F. Supp. 2d 249, 260 (E.D.N.Y. 2009) ("The fact that [the defendant-sales manager/vice president] may have had supervisory control over [the] [p]laintiff's father and other employees at Alliance or that [the plaintiff's father] may have sought his permission to hire Plaintiff, without more, does not subject Defendant to liability under § 296(1).")

Where, however, the plaintiff alleges that a defendant had knowledge of the discriminatory conduct and held a supervisory role in the company, courts have found it reasonable to infer that a defendant is an "employer" under section 296(1). See Emmons v. City Univ. of New York, 715 F. Supp. 2d 394, 421 (E.D.N.Y. 2010) (finding that it was reasonable to infer that defendant had power over personnel decisions where the plaintiff alleged that the defendant was president of the company and that the plaintiff had previously filed "numerous complaints" with him); Graff v. North Shore Univ. Hosp., 1 F. Supp. 2d 318, 324 (S.D.N.Y. 1998) ("[Defendant-CEO and President] had the power to do more than carry out decisions made by others and he had personal knowledge insofar as [the plaintiff] himself

complained to him (as distinguished, for example, from a situation where a personnel officer briefs the president after a suit is filed).").

However, even if a plaintiff fails to allege that a defendant is an "employer" within the meaning of Section 296(1), a plaintiff can still make a claim against a defendant under Section 296 if the plaintiff alleges that the defendant "aid[ed], abet[ed], incite[d], compel[led] or coerce[d]" "an unlawful discriminatory practice." N.Y. Exec. Law § 296(6) (McKinney). To state a claim that a defendant "aided and abetted" a discriminatory action, a plaintiff is required to plead facts that suggest the defendant "actually participate[d] in the conduct giving rise to a discrimination claim." Anand., 2012 WL 2357720 at *10 (citing Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004)). In addition, "[a]iding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor." Robles v. Goddard Riverside Cmty. Ctr., 08 CIV.4856 (LTS), 2009 WL 1704627, at *3 (S.D.N.Y. June 17, 2009) (internal quotation marks and citations omitted).

For example, in Robles v. Goddard Riverside Cmty, 08 CIV.4856 (LTS), 2009 WL 1704627, at *3 (S.D.N.Y. June 17, 2009), the court denied the Defendants' motion to dismiss with respect to an executive director of a community center that employed the plaintiff based on allegations that he "personally[ ] and individually, made the decision to discharge [the] [p]laintiff." However, the Court granted the motion to dismiss with respect to the board of directors of the community center because the plaintiff "proffer[ed] neither facts demonstrating any participation by any such defendant in [the plaintiff's] discharge decision nor any facts indicative of any discriminatory motivation in connection with the Board's decision to deny Plaintiff's [employment] grievance." Id.; see also Dasrath v. Stony Brook Univ. Med. Ctr., 965 F. Supp. 2d 261, 275 (E.D.N.Y. 2013) ("The amended complaint fail[s] to set forth the basis for

plaintiff's section 296(6) claim against each individual defendant, *i.e.,* the conduct by the individual defendant that allegedly constituted aiding and abetting and the exact violation that the conduct is alleged to have aided and abetted.") (citations, internal quotation marks, and alterations omitted).

### b. As to Whether the Individual Defendants Are Subject to Liability under the NYSHRL

Here, the Plaintiffs claim that the Defendants Ficalora, Wann, and DiSalvatore violated the NYSHRL by failing to give the Plaintiffs "merit and credit during their employment because of race, sex, color and national origin." (Consolidated Compl. at ¶ 430.) There are no allegations that Defendants Ficalora, Wann, DiSalvatore had an "ownership interest" in NYCB. Therefore, the Plaintiffs must show either that they had "authority to do more than carry out personnel decisions" or that they aided and abetted a discriminatory action. (See id. at ¶ 430.)

With respect to the Defendant DiSalvatore, the Plaintiffs allege that he was a "[d]irector and an assistant to Robert Wann" but do not describe the nature of his position, nor do any of their allegations of against him suggest he had any role in personnel decisions. As such, the Court cannot plausibly infer that he was an "employer" within the meaning of section 296(1) of the NYSHRL. Dasrath, 965 F. Supp.2d at 272 ("The allegations in the amended complaint, even if true, demonstrate only that [the defendants] had the power to supervise [the] plaintiff in his daily duties and to evaluate his performance, not that they had the power to independently carry out personnel decisions regarding him, such as his rate of pay, schedule or termination.")

Moreover, the Plaintiffs do not allege that Defendant DiSalvatore "aided and abetted" the alleged discriminatory action. Indeed, the only allegation in the consolidated complaint against the Defendant DiSalvatore is that he attended a meeting during which one of the plaintiffs was questioned about a security incident. (Consolidated Compl. at ¶¶ 17, 337.) Thus, the complaint

fails to allege facts from which, if true, could plausibly show that DiSalvatore participated in an alleged discriminatory action. <u>See</u> <u>Dasrath</u>, 965 F. Supp. 2d at 275 ("The amended complaint fails to set forth the basis for plaintiff's section 296(6) claim against each individual defendant[.]") (citations, internal quotation marks, and alterations omitted).

With respect to the Defendant Wann, the Plaintiffs allege that he was the "Chief Operating Officer (COO) of NYCB" and that he and Ficalora made "public statements at a meeting of all NYCB Bank managers . . . claiming that the bank was profitable and that there would be no layoffs." (Consolidated Compl. at ¶ 92.) Even if true, the fact that Wann made a statement as to layoffs does not, by itself, plausibly suggest that he had the independent authority to make personnel decisions relating to promotions, pay, or terminations, which goes to the heart of the Plaintiffs' NYSHRL claim. Accordingly, the Court finds that the Plaintiffs have failed to plead enough facts to show that Wann was an "employer" within the meaning of the NYSHRL. <u>See</u> <u>Dasrath</u>, F. Supp. 2d at 271 ("The allegations in the amended complaint, even if true, demonstrate only that Giacopelli and Von Braun had the power to supervise plaintiff in his daily duties and to evaluate his performance, not that they had the power to independently carry out personnel decisions regarding him, such as his rate of pay, schedule or termination.").

Further, the Plaintiffs do not plead facts that connect the Defendant Wann's statement regarding layoffs to any discriminatory action against the Plaintiffs, nor suggest that he had any discriminatory motivation in making the statement. As such, the Plaintiffs do not state a plausible claim that Wann "aided and abetted" a discriminatory action. <u>See</u> <u>Robles</u>, 2009 WL 1704627, at *3 ("Plaintiff's allegations regarding the Defendant Board Members proffer neither facts demonstrating any participation by any such defendant in Russo's discharge decision nor

any facts indicative of any discriminatory motivation in connection with the Board's decision to deny Plaintiff's grievance.").

Finally, the Plaintiffs allege that **(i)** the Defendant Ficalora was the "President and Chief Executive Officer (CEO) of NYCB"; (ii) that he made statements at a public meeting of employees that NYCB was profitable and would not lay off workers; and (iii) that he overturned a decision made by unspecified individuals at NYCB to transfer the Plaintiff Cappello, an assistant branch manager at NYCB, to another branch. (Consolidated Compl. at ¶¶ 15, 337.) Given Ficalora's position as President and CEO of NYCB and the Plaintiffs' allegations that he played a role in a transfer decision related to the Plaintiff Cappello, the Court finds that these allegations could plausibly suggest that the Defendant Ficalora had "authority to do more than carry out personnel decisions" and, therefore, he is an "employer" within the meaning of section 296(1). See Emmerson, 715 F. Supp. 2d at 421 ("[S]ince Jackson was the President of MEC, a reasonable inference can be drawn from the complaint that he had the power to hire and fire Emmons.")

However, the allegations against the Defendant Ficalora, even if true, do not state a claim for discrimination under Section 296 of the NYSHRL. The Plaintiffs do not make allegations sufficient to plausibly infer that the Defendant Ficalora was involved in any kind of discrimination. Indeed, the sparse allegations about the general structure at NYCB and the nature of Ficalora's position at NYCB do not plausibly give rise to an inference that he was part of "senior management," who the Plaintiffs allege instructed regional managers to lower female employees' performance scores. See Williams v. City of New York, 11 CIV. 9679 (CM), 2012 WL 3245448, at *7 (S.D.N.Y. Aug. 8, 2012) (finding that allegations that the plaintiff was "subjected to different and worse treatment by his supervisor and his employer due to his

gender" to be "conclusory" and, on that basis, dismissing the plaintiff's gender discrimination claim).

In addition, the specific allegation that Ficalora made public statements to employees about the profitability of the firm cannot be plausibly be read to suggest a discriminatory motive. Further, the allegation that Ficalora overturned a decision to transfer the Plaintiff Cappello appears to suggest, if anything, that Ficalora's actions were intended to counteract discrimination.  See Id. ("Allegations supporting motive may include preferential treatment given to similarly situated individuals or remarks that convey discriminatory animus . . . . In the absence of such allegations, dismissal at the pleading stage is warranted.") (internal quotation marks and citations omitted))

Therefore, the Court dismisses with prejudice the Plaintiffs' NYSHRL claims against the Individual Defendants.

**E.  As to Whether the Plaintiffs' Claims for Infliction of Emotion Distress and Negligent Infliction of Emotion Distress Should be Dismissed**

The Defendants argue that the Plaintiffs fail to state claims upon which relief can be granted with regard to the Plaintiffs' state law claims for (1) intentional infliction of emotional distress and (2) negligent infliction of emotional distress.  For the foregoing reasons, the Court agrees and dismisses with prejudice the Plaintiffs' claims for intentional and negligent infliction of emotion distress.

**1.  Intentional Infliction of Emotional Distress**

The Defendants argue that the Plaintiffs' intentional infliction of emotion distress claims should be dismissed because (a) the Plaintiffs failed to commence their individual actions against the Defendants within one year of their terminations; and (b) they have not plead factual allegations that rise to the level of the outrageous behavior necessary to assert an intentional

infliction of emotion distress claim. The Court does not reach the statute of limitations issue because the Plaintiffs' allegations, even if true, do not meet the high standard required to plead an intentional infliction of emotional distress claim.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Semper v. New York Methodist Hosp., 786 F. Supp. 2d 566, 586 (E.D.N.Y. 2011) (citing Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996)). Whether the Plaintiffs' allegations are "extreme and outrageous" is a matter of law to be decided by the court. Id. (citing Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999))

To survive a motion to dismiss, the Plaintiff must plead facts "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." McGown v. City of New York, 09 CIV 8646 (CM), 2010 WL 3911458, at *4 (S.D.N.Y. Sept. 9, 2010) (citation omitted). "The bar is extremely high, and this highly disfavored cause of action is almost never successful." Zick v. Waterfront Comm'n of New York Harbor, 11 CIV. 5093 (CM), 2012 WL 4785703, at *6 (S.D.N.Y. Oct. 4, 2012) (internal quotation marks, citations, and alterations omitted) (finding that the plaintiffs' allegation that she was excluded from certain social functions and other employees were given preferential treatment "simply do not rise to the level requisite for a claim of emotional distress").

New York courts are especially reluctant "to allow [emotional distress] claims in employment discrimination cases. The courts are wary of allowing plaintiffs to recharacterize claims for wrongful or abusive discharge . . . . as claims for intentional infliction of emotional

distress." Semper, 786 F. Supp.2d at 587 (citation omitted); see also Virola v. XO Communications, Inc., 05-CV-5056 (JG), 2008 WL 1766601, at *21 (E.D.N.Y. Apr. 15, 2008) ("New York courts do not, as a rule, extend the tort of intentional infliction of emotional distress to employment discrimination claims.")

In response, the Plaintiffs assert that their allegations that the Defendants lowered the Plaintiffs' performance evaluations, failed to give proper guidance regarding tracking surveys, and did not rehire the Plaintiffs after telling them to apply for open positions at NYCB could, together, be considered "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." (The Pls.' Opp'n Memo of Law, at 17.) Notably, however, they do not cite a single case in support of their proposition and rely merely on a claim that "the norms in our community grow less tolerant all the time" and therefore the Defendants' conduct should be "actionable." (Id. at 18.) The Court disagrees.

The Plaintiffs' allegations, even if true, fall well short of the high standard required for pleading intentional infliction of emotion distress claims. See Semper, 786 F. Supp. 2d at 587 ("Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of [IIED] because the conduct alleged is not sufficiently outrageous.") (citation omitted).

### 2. Negligent Infliction of Emotional Distress

In order to state a cause of action for negligent infliction of emotional distress, a plaintiff must also allege that a defendant engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Meadows v. Planet Aid, Inc., 676 F. Supp. 2d 83, 97 (E.D.N.Y. 2009). In response to the Defendants' argument, the Plaintiffs re-allege the exact

same conduct with respect to the intentional infliction of emotional distress claim. Therefore, as with the Plaintiffs' intentional infliction of emotional distress claims, the Plaintiffs' allegations, even if true, do not rise to the level of outrageousness required to plead a negligent infliction of emotional distress claim.

Therefore, the Court grants the Defendants' motion to dismiss the Plaintiffs' intentional and negligent infliction of emotional distress claims. Accordingly, the Court has dismissed all of the Plaintiffs' claims against the Individual Defendants. The Court will next address the propriety of some of the Plaintiffs' claims against the Corporate Defendants.

## F. As to Whether the Plaintiffs' Claims Against the Corporate Defendants Fail as a Matter of Law

The Defendants argue that some of the Plaintiffs' remaining claims against the Corporate Defendants under Title VII, the ADA, the ADEA, and the NYSHRL should be dismissed pursuant to Rule 12(b)(6). For the reasons set forth below, the Court grants the Defendants' motion in part and denies it in part.

### 1. Legal Standard

#### a. Title VII Discrimination and Retaliation Claims

Title VII prohibits discrimination based on, among other things, race, gender, or sex "with respect to . . . compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). To allege a claim of discrimination under Title VII, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." Johnson v. Long Island Univ., 13-CV-2464 (JS), 2014 WL 4926324, at *5 (E.D.N.Y. Sept. 30, 2014) (citing Reynolds v. Barrett, 685 F.3d 193, 202 (2d Cir. 2012)).

### b.  NYSHRL Claims

Section 296(1) of the NYSHRL makes it unlawful for an "employer" to "discharge from employment" or "discriminate against such individual in compensation or in terms . . . of employment" on the basis of, among other things, an individual's "age, race, creed, color, national origin, sexual orientation, military status, sex, disability[.]"  N.Y. Exec. Law § 296 (McKinney).

Claims brought under NYSHRL for discrimination or retaliation are "analytically identical to claims brought under Title VII."  Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 n. 10 (2d Cir. 2011) (citation omitted).  However, unlike Title VII claims, NYSHRL claims do not contain an administrative exhaustion requirement.  Arias-Zeballos v. Tan, 06 CIV. 1268 (GEL), 2006 WL 3075528, at *6 (S.D.N.Y. Oct. 26, 2006).

### c.  ADA Claims

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Davis v. New York City Dep't of Educ., 10-CV-3812 (KAM), 2014 WL 917142, at *6 (E.D.N.Y. Mar. 7, 2014) (quoting 42 U.S.C. § 12112(a)). To state a claim for disability discrimination, a plaintiff must allege that: "(1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) she was fired or suffered an adverse employment action because of her disability." Jordan v. Forfeiture Support Associates, 928 F. Supp. 2d 588, 605 (E.D.N.Y. 2013)

### d. ADEA Claims

To state claim under the ADEA for age discrimination, a plaintiff must allege (1) "membership in the protected age group," (2) "qualifications for the job at issue," (3) "an adverse employment action," and (4) "that the adverse action occurred under circumstances giving rise to an inference of discrimination." Hemans v. Long Island Jewish Med. Ctr., 10-CV-1158 (JFB) AKT, 2010 WL 4386692, at *7 (E.D.N.Y. Oct. 28, 2010) (citing D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 195 (2d Cir.2007)) (alterations omitted).

In Gross v. FBL Financial Services, Inc., 557 U.S. 167, 180, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), the Supreme Court held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Therefore, to survive a motion to dismiss, the plaintiff must plead enough facts to make plausible the conclusion that "but for" her age **the** plaintiff would not have been fired. Bohnet v. Valley Stream Union Free Sch. Dist. 13, No. 12-CV-1989 (DRH), 2014 WL 3400462, at *4 (E.D.N.Y. July 14, 2014).

### 2. The Cooper Jones Plaintiffs' Claims

The remaining causes of action brought by the Cooper Jones Plaintiffs are for (a) age discrimination under the ADEA; (b) Title VII gender discrimination; (c) and NYSHRL discrimination on the basis of race, sex, color, and national origin; and (d) federal and NY WARN Act claims.

The Defendants argue that (1) the Cooper Jones Plaintiffs fail to state a claim for discrimination under federal or state law; (2) the Cooper Jones Plaintiffs did not exhaust their administrative remedies with respect to some of their federal discrimination claims; and (3) some of the Cooper Jones Plaintiffs federal discrimination claims are time-barred. The Court need not

reach the Defendants' second and third arguments, as it finds that the Cooper Jones Plaintiffs fail to state claims for discrimination under either federal or state law.

In the instant case, the only non-conclusory facts that the Cooper Jones Plaintiffs allege are their race, age, nationality, ethnicity, and their respective dates of hire. (Consolidated Compl. at ¶¶ 19–52, 365–385.) These facts alone do not give rise to an inference of discrimination. See Herbert, 2014 WL 4923100, at *4 ("Although [the plaintiff] identifie[d] himself as a "Black male" in his Charge, he offers no facts to even suggest Delta terminated his employment because of his race. The Court must therefore dismiss this claim."); Lawtone-Bowles v. City of New York, Dep't of Sanitation, No. 13 CIV. 1433 (JGK), 2014 WL 2429070, at *6 (S.D.N.Y. May 30, 2014) ("Because the plaintiff has failed to allege any facts supporting an inference of age discrimination, her ADEA claim must be dismissed.").

For instance, the Cooper Jones Plaintiffs do not allege that their supervisors or employees made any remarks that could be viewed as reflecting discriminatory animus, nor do they allege that any employees of a different, race, or gender were given preferential treatment as compared to them. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007) (affirming the district court's dismissal of Title VII gender discrimination claims where "[p]laintiff's Complaint does not allege that she was subject to any specific gender-based adverse employment action by . . . of the other defendants.") Moreover, as the Defendants correctly note, the diverse ethnicities of the Cooper Jones Plaintiffs makes implausible, without any other allegations of discrimination, any inference that they were terminated on the basis of their national origin or ethnicities.

In addition, since the Cooper Jones Plaintiffs fail to allege the branch where they worked, allegations in other sections of the consolidated complaint, such as that 22 of the 28 employees terminated at the Islandia branch of NYCB were female, do not render their gender

discrimination claims any more plausible.  (See Consolidated Compl. ¶¶ 365–385.); cf. Adams v. New York State Educ. Dep't, 752 F. Supp. 2d 420, 465 (S.D.N.Y. 2010) aff'd sub nom. Ebewo v. Fairman, 460 Fed. App'x 67 (2d Cir. 2012) ("The claim merely alleges that plaintiffs are over 40 years of age and were replaced by younger teachers. That merely repeats the statutory elements, without setting out any facts from which age discrimination can be inferred.").

Similarly, none of the Cooper Jones Plaintiffs allege that they have a disability — let alone that there was a causal connection between their disabilities and their terminations. See, e.g., Carter v. City of New York, No. 13-CV-1839 (RA), 2014 WL 4953641, at *2 (S.D.N.Y. Sept. 30, 2014) ("Although it is true that in the Amended Complaint Carter alleges that he explained his mental impairment to [the defendants] and requested help locating the individual who signed for his letter, he still fails to assert that he was denied the opportunity to participate in or benefit from Bellevue's services . . .  or was otherwise discriminated against . . .  by reason of [his] disabilit[y]."); Doverspike v. Int'l Ordinance Technologies, 817 F. Supp. 2d 141, 150 (W.D.N.Y. 2010) ("[T]he Complaint is devoid of any allegation that Defendant was ever aware of any of Plaintiff's physical issues prior to Plaintiff's discharge, much less any negative impact such physical concerns could have on Plaintiff's ability to work, or that Plaintiff ever requested, and was denied, a reasonable accommodation of such disabilities."), aff'd sub nom. Doverspike v. Int'l Ordinance Technologies, 445 F. App'x 399 (2d Cir. 2011).

Finally, with respect to age discrimination, in the facts section common to all causes of action, the Plaintiffs allege that "BANCORP and NYCB have engaged in activities and promotions designed to replace Plaintiffs and the others adversely affected by the mass terminations, with younger, less experienced individuals whose compensation would be significantly less than those employees who had been terminated."  (Consolidated Compl. ¶

107.)  These allegations, without more, do not plausibly state a claim for age discrimination under the ADEA.  Leon v. Dep't of Educ., No. 10-CV-2725, 2014 WL 1689047, at *13 (E.D.N.Y. Apr. 29, 2014) (holding that the plaintiff's "continued allegations that 'younger similarly situated teachers' were treated differently than she are conclusory and amount to little 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation[s]'") (quoting Iqbal, 556 U.S. at 678, 129 S. Ct. 1937)); Sobon v. Horizon Eng'g Assocs., LLP, No. 5:13-CV-1431 (GTS), 2014 WL 4889340, at *9 (N.D.N.Y. Sept. 30, 2014) ("[The plaintiff's] repeated references to other, nameless, 'significantly' or 'substantially' younger employees who were given assistance and promotions while Plaintiff was not, do not allow a reasonable inference of age discrimination, nor do Plaintiff's allegations that she was 'singled out because of her age' and denied opportunities for promotion 'because of her age.'").

Accordingly, the Court dismisses the Cooper Jones Plaintiffs' claims for age, gender, race, and disability discrimination under the NYSHRL, Title VII, and the ADA.  As such, the only remaining claims asserted by the Cooper Jones Plaintiffs are the fifth and tenth causes of action for failure to give notice under the federal and state WARN Acts against the Corporate Defendants.

### 3. The Plaintiff Warshun's ADA Claim

The Plaintiff Warshun's remaining causes of action are claims against the Corporate Defendants for the following:  (i) disability discrimination under the ADA; (ii) age discrimination under the ADEA; (iii) gender discrimination under Title VII and the NYSHRL; and (iv) violation of the Federal and State WARN Acts.

The Defendants argue that the Plaintiff Warshun's ADA claim should be dismissed because Warshun (a) failed to allege that she had a "disability" within the meaning of the ADA

and (b) she did not plead facts sufficient to show that she was terminated because of her disability.

With respect to her disability, Warshun alleges that "in or about 2007," she "sustained an injury" during the course of her employment at NYCB. (Consolidated Compl. at ¶¶ 158–159.) Warshun alleges that she had "spinal fusion surgery" as a result of the injury and that "[f]ollowing the surgery, Warshun was restricted in her ability to climb stairs and lift objects." (Id.)  She further alleges that in "2010, she was, at her request, exclusively assigned to the drive up banking facility located at 14 Conklin Street in Farmingdale, NY."  (Id.)

The Defendants argue that Warshun's injury is not a "disability" within the meaning of the ADA because there is no allegation that the injury "substantially limited any major life activities at the time NYCB made the decision to terminate her employment."  (The Defs.' Memo of Law, at 24.)

Until recently, a plaintiff was required to show that her perceived disability was one that "substantially limited a major life activity." Jordan v. Forfeiture Support Associates, 928 F. Supp. 2d 588, 605 (E.D.N.Y. 2013).  However, the ADA Amendments Act of 2008 (the "ADAAA"), Pub. L. No. 110–325, 112 Stat. 3553 (2008) (codified as amended at 42 U.S.C. §§ 12101–12102 (1990)) amended the ADA to set out a more lenient standard for determining whether an individual is regarded as disabled under the ADA:  "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity.*" Id. (quoting 42 U.S.C. § 12102(3)(A)) (emphasis in original). Therefore, following passage of the ADAAA, a plaintiff need not show that she had a condition

that "substantially limited a major life activity." Id. (quoting 42 U.S.C. § 12102(3)(B))  Rather, she need only show that the employer perceived her as being disabled and that the impairment was not "minor" or "transitory," meaning that the impairment has "an actual or expected duration of 6 months or less."  Id.

Though it is unclear whether Warshun's requested transfer was as a result of her spinal injury, liberally construing the Plaintiff's allegations, the Court finds that she has pled enough facts to suggest that the injury was not minor or transitory. See  id. (holding that the *pro se* plaintiff sufficiently alleged a "disability" under the ADA where she alleged that her employer had granted her a six week absence due to carpal tunnel syndrome and that she continued to suffer pain as a result of the injury).

However, even assuming that Warshun's injury qualifies as a "disability," Warshun fails to plead facts sufficient to show any connection between her alleged "disability" and her termination.  See e.g., Jordan v. Forfeiture Support Associates, 928 F. Supp. 2d 588, 608 (E.D.N.Y. 2013) (dismissing an ADA claim where the plaintiff  "offer[ed] virtually no connection" between an incident where her supervisor "yelled" at her for requesting a leave of absence due to carpal tunnel syndrome and her termination several years later); Jackson v. Elmhurst Hosp. Ctr., No. 10-CV-5248 (RRM), 2012 WL 868965, at *7 (E.D.N.Y. Mar. 14, 2012) ("[P]laintiff cannot overcome the facts averred in her own complaint that provide a wholly non-discriminatory explanation for the warning she received in January of 2009."); Smith v. Reg'l Plan Ass'n, Inc., No. 10 CIV. 5857 (BSJ), 2011 WL 4801522, at *6 (S.D.N.Y. Oct. 7, 2011) (dismissing an ADA claim because, among other things, "[the plaintiff] has not claimed that she was subject to any adverse action (i.e., that she was terminated or stripped of job duties) because of her disability").

Indeed, Warshun's only offers wholly non-discriminatory explanations for a disciplinary warning she received for failing to reconcile money at the end of her shift and for her termination. According to the consolidated complaint, after Warshun's termination on October 13, 2011, she received a letter stating that her termination, "w[as] objectively based upon factors including recent disciplinary history, scores received in recent performance evaluations, branch audits and special skills." (Consolidated Compl. at ¶ 178.) Moreover, Warshun's "spinal fusion" surgery occurred in 2007, three years prior to her termination, and it is not clear from her complaint whether her supervisors were even aware of her condition prior to her termination.

Therefore, the Court grants the Defendants' motion to dismiss her fourth cause of action alleging discrimination under the ADA. See Jordan v. Forfeiture Support Associates, 928 F. Supp. 2d at 608 (E.D.N.Y. 2013) ("[The] [p]laintiff was not discharged until several years after [the plaintiff's colleague] allegedly yelled at her and scolded her for incorrectly taking worker's compensation instead of disability leave, and plaintiff 'offers virtually no connection between any disability' and her termination in August 2009.") (citation omitted).

Accordingly, Warshun's remaining causes of action include: (i) the first cause of action for age discrimination under the ADEA; (ii) the second cause action for Title VII and NYSHRL gender discrimination; and (iii) the fifth and tenth causes of action under the federal and state WARN Acts.

### 4. The Cappello Plaintiffs' Claims

Remaining are the Cappello Plaintiffs claims against the Corporate Defendants under the NYSHRL for discrimination based on (a) race, (b) gender, and (c) national origin. The Defendants argue that the Cappello Plaintiffs fail to state any claims under the NYSHRL or, in the alternative, that some of the Cappello Plaintiffs have alleged, at most, a gender

discrimination claim.  The Court grants in part and denies in part the motion to dismiss the Cappello Plaintiffs' NYSHRL discrimination claims against the Corporate Defendants.

### a. The Cappello Plaintiffs' NYSHRL Race Discrimination Claims

The Cappello Plaintiffs, with the exception of the Plaintiffs Cappello and Cassidy, do not make any allegations of racial discrimination other than stating their races and ethnicity.  These allegations, without more, do not give rise to a plausible inference that their terminations were as a result of racial discrimination. Herbert v. Delta Airlines, No. 12-CV-01250 (SLT), 2014 WL 4923100, at *4 (E.D.N.Y. Sept. 30, 2014) ("Although Mr. Herbert identifies himself as a 'Black male' in his Charge, he offers no facts to even suggest Delta terminated his employment because of his race. The Court must therefore dismiss this claim."); Gertskis v. U.S. E.E.O.C., No. 11 CIV. 5830 (JMF), 2013 WL 1148924, at *8 (S.D.N.Y. Mar. 20, 2013) ("Plaintiff's claims are conclusory and devoid of factual content creating a plausible inference of any discriminatory conduct.").

However, the Plaintiff Cassidy, who is Caucasian, alleges two incidents of "reverse discrimination," though she does not make clear where or when these incidents took place.  First, she alleges that she was transferred to another branch following complaints made by a Spanish male supervisor to human resources in which he wrongfully accused her of having a "prejudice against Spanish people."  (Consolidated Compl. at ¶¶ 319–322.)  Second, Cassidy alleges that a black female employee made complaints about Cassidy to regional managers and human resources after Cassidy gave her a poor evaluation.  (Id. at ¶ 323.)  Cassidy also alleges that these two incidents were the "but for" cause of her termination.  (Id. at ¶ 318.)

Even if liberally construed, these incidents fail to state a claim for race discrimination. To state a claim for race discrimination, the Plaintiff must show that she suffered an "adverse

employment action." Henvill v. Metro. Transp. Auth., No. 13 CIV. 7501 (GBD), 2014 WL 5375115, at *1 (S.D.N.Y. Oct. 10, 2014).  A transfer or disciplinary action only constitutes an adverse employment action "if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career."  Galabya v. New York City Bd. of Educ., 202 F.3d 636, 641 (2d Cir. 2000).  Here, the Plaintiffs do not allege any facts to show that Cassidy's transfer to another branch or the disciplinary warnings she received changed her responsibilities or set back her career. See Henvill, 2014 WL 5375115 at *2 ("However, Plaintiff has not shown an adverse employment action because he has not alleged how his temporary reassignments, his inability to issue summonses (for an unspecified amount of time), or the denial of training opportunities materially changed his terms of employment or job responsibilities."); Parra v. City of White Plains, No. 13 CV 5544 (VB), 2014 WL 4468089, at *8 (S.D.N.Y. Sept. 4, 2014) ("Without more, a reprimand is not an adverse action." (citation omitted)).

Moreover, the Plaintiff have failed to plead facts showing that these incidents were in any way causally connected to her termination on October 13, 2011. See Henry v. NYC Health & Hosp. Corp., No. 13 CIV. 6909 (PAE), 2014 WL 957074, at *7 (S.D.N.Y. Mar. 10, 2014) ("The Amended Complaint, however, fails to allege facts demonstrating that this comment, or the unspecified other racially discriminatory comments to which it alludes, was causally connected to conduct rising to the level of an adverse employment action.")  Here, strangely, the consolidated complaint does not set forth the dates of when these incidents allegedly occurred or even to what branch that she was transferred to. Therefore, the Court cannot reasonably infer that these incidents were related to her termination on October 13, 2011.  Accordingly, the Court finds Cassidy's allegations that these two incidents were the "but for" cause of her termination to be conclusory and fails to plausibly allege a claim for race discrimination.

The Plaintiff Capello, who is Caucasian, also alleges that she was "the victim of reverse discrimination" because she was "accused by NYCB of 'inappropriate racial profiling'" for calling "911" to "report suspicious activity." (Consolidated Compl. at ¶¶ 333–335.) Even assuming that this incident suggested discrimination, the Plaintiff does not allege that it resulted in any "adverse employment action." Indeed, the only consequence appears to have been a meeting with senior management where she was told that she "overreacted." (Consolidated Compl. ¶ 337.)

Therefore, the Court finds that the Cappello Plaintiffs have failed to plead facts sufficient to state a claim for NYSHRL race discrimination.

### b. The Cappello Plaintiffs' NYSHRL National Origin Discrimination Claims

The Court also finds that the Cappello Plaintiffs have failed to sufficiently allege a claim under the NYSHRL based on national origin discrimination.

Other than alleging their ethnicities, the Cappello Plaintiffs do not allege any non-conclusory facts referencing national origin discrimination. For example, the Plaintiff Morency alleges that she was terminated "for complaints made to Human Resources regarding discrimination due to natural [sic] origin," but does not allege what those complaints were in reference to or any facts surrounding the incident. (Consolidated Compl. ¶ 305.) Similarly, the Plaintiff Zielinski alleges, without more, that she "was embarrassed and discriminated against by Assistant Head Teller, Carmen Biaz, because of her ethnic background." (Id. at ¶ 355.) Again, these are precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that do not meet the plausibility standard established by Twombly and Iqbal. See Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009).

The Plaintiff Ortega also alleges that she applied for an open position and was denied an interview. (Consolidated Compl. ¶ 317.) She alleges that "Albert Clayton" was later offered the position and that he was an "Asian male." (Id.) Even reading the consolidated complaint liberally, the Plaintiff Ortega has pled virtually no facts that give rise to an inference that NYCB did not grant Ortega an interview because of her national origin. Moreover, the Plaintiffs fail to allege that NYCB gave "Asian males" preferential treatment or that NYCB employees made comments or took actions that could give rise to an inference of discriminatory animus. See Idlisan v. New York City Health & Hospitals Corp., No. 12 CIV. 9163 (PAE), 2013 WL 6049076, at *5 (S.D.N.Y. Nov. 15, 2013) ("For instance, [the plaintiff[ does not allege that [the defendant, his employer] gave non-disabled applicants preferential treatment, or that any [of the defendant's] employees made comments or took actions that could give rise to an inference of discriminatory.")

Indeed, the only comment by "Human Resources" to Ortega regarding her application suggested a non-discriminatory motive for not granting her an interview: "When Plaintiff Ortega questioned Human Resources as to why she was not given the opportunity to interview, while qualified for the position, she was told by Ann Vento that they are not required to grant every applicant an interview." (Consolidated Compl. at ¶ 317.) These allegations, even if true, do not sufficiently plead a claim for national origin discrimination.

As such, the Court finds that the Cappello Plaintiffs have failed to plead facts sufficient to allege an NYSHRL claim for national origin discrimination.

### c. The Cappello Plaintiffs' NYSHRL Gender Discrimination Claims

The Cappello Plaintiffs make a variety of allegations relating to disparate treatment based on their gender. One way to establish an inference of gender discrimination based on disparate

treatment is by identifying a specific male comparator.  Barrett v. Forest Labs., Inc., No. 12-CV-5224 (RA), 2014 WL 4058683, at *17 (S.D.N.Y. Aug. 14, 2014) ("Although the Court does not hold that plaintiffs must necessarily identify a male comparator to state a plausible Title VII wage discrimination claim, doing so will certainly strengthen the complaint's allegations."); see also see also Johnson v. Long Island Univ., No. 13-CV-2464 (JS), 2014 WL 4926324, at *9 (E.D.N.Y. Sept. 30, 2014) ("A plaintiff can show circumstances giving rise to an inference of discrimination in a variety of ways, including 'by relying on the theory of disparate treatment; that is, by showing that [his] employer treated [him] less favorably than a similarly situated employee outside [his] protected group.'") (quoting Risco v. McHugh, 868 F.Supp.2d 75, 100 (S.D.N.Y. 2012)) (alteration in original).

Courts in this Circuit have differed on the amount of detail that a plaintiff is required to plead about the male comparator to survive a motion to dismiss.  For instance, in Thompson v. New York City, No. 12 CIV. 8034 (PAE), 2013 WL 6409326, at *8 (S.D.N.Y. Dec. 9, 2013), the court dismissed one of the plaintiff's race discrimination claims where the plaintiff alleged that the defendant-employer did not seek to terminate a colleague based on a similar disciplinary allegations.  The court reasoned that the plaintiff's colleague was not an appropriate comparator because the complaint "failed to describe the behavior in which [the plaintiff's colleague] was accused of engaging, how long the alleged misconduct lasted, or whether the allegations against [the plaintiff's colleague] were corroborated or substantiated."  Id.  Accordingly, the court found "[t]he spare allegations in the SAC supply no nonspeculative basis to conclude that defendants treated [the plaintiff] and [the plaintiff's colleague] differently based on race."  Id.

By contrast, in Barrett v. Forest Labs., Inc., No. 12-CV-5224 (RA), 2014 WL 4058683, at *18–20 (S.D.N.Y. Aug. 14, 2014), the court denied the defendants' motion to dismiss his former

employees' class action claims and their individual claims of gender discrimination based on disparate treatment.  There, ten plaintiffs alleged that a "'male colleague' was paid a higher base salary, 'even though he did not have superior qualifications' and even though he and Plaintiff 'held jobs requiring the same skills, efforts and responsibilities, which they performed under similar working conditions.'"  Id. at 17.  Of the ten plaintiffs, four alleged no additional facts in support of their allegation that the male comparators performed similar work, such as their male colleague's job titles or why they believed their qualifications were superior to their "male colleague's."  Id.  Despite these omissions, the court found that the plaintiffs had sufficiently alleged class claims for a pattern or practice of gender discrimination when viewed in conjunction with other circumstantial evidence of discrimination, including "allegations that a number of managers made sexist comments" and "allegations that the Company repeatedly ignored complaints of harassment and discrimination."  Id. at 18–19.  Based on this reasoning, the court also denied the defendants' motion to dismiss the same ten plaintiffs' individual gender discrimination claims.  Id. at 20.

The court in Barrett relied on Chepak v. Metro. Hosp., 555 Fed. App'x. 74, 76 (2d Cir. 2014).  There, the district court granted a motion to dismiss finding, in part, that the plaintiff's allegation that she was paid less than "males" even though she did "the exact same job" and "performed the same job with equal skill, effort, and responsibility under similar working conditions" did not state a plausible claim for gender discrimination.  Chepak v. Metro. Hosp., No. 11 CIV. 9698 (TPG), 2013 WL 1285270, at *1 (S.D.N.Y. Mar. 29, 2013) vacated, 555 F. App'x 74 (2d Cir. 2014).  In a summary order, the Second Circuit vacated the district court's order, finding that the plaintiffs' allegations had plausibly stated a gender discrimination, "especially in light of [the plaintif's] *pro se* status."  555 Fed. App'x. at 76.

The Court finds <u>Chepak</u> and <u>Barrett</u> to be applicable to this case. Like some of the plaintiffs in <u>Barrett</u> and <u>Cheptak</u>, all of the Cappello Plaintiffs allege that they "were paid less than their male counterparts with equal seniority." (Consolidated Compl. at ¶ 242.); <u>see also</u> <u>Barrett,</u> 2014 WL 4058683 at *1 (S.D.N.Y. Aug. 14, 2014) (noting one of the plaintiffs alleged that her "'male colleague' '[u]pon information and belief" was paid a higher base salary than she was, 'even though he did not have superior qualifications, and even though Ms. Barrett and he held jobs requiring the same skills, efforts and responsibilities, which they performed under similar working conditions'").

Some of the Cappello Plaintiffs provide more detail about their male comparators. In this regard, the Cappello Plaintiffs allege that in 2010 "Said Salah," who was a member of "management" at NYCB's Howard Beach branch, received a disciplinary warning, along with other female employees at the branch, including the Plaintiffs Cappello and Berchiolli, as a result of an incident of employee theft. (Consolidated Compl at ¶¶ 340–45.) Yet Salah was later promoted, while other female employees at the branch, including Plaintiffs Cappello, Byrnes Berchiolli, Falco and Quiles, were terminated. (Consolidated Compl. at ¶ 350.) Even under the standards for disparate treatment under <u>Thompson</u>, the Plaintiffs Cappello, Byrnes Berchiolli, Falco and Quiles would survive a motion to dismiss, as their allegations do "describe the behavior in which [the plaintiff's colleague] was accused of engaging, how long the alleged misconduct lasted, or whether the allegations against [the plaintiff's colleague] were corroborated or substantiated." 2013 WL 6409326 at *8.

In addition, like the plaintiffs in <u>Barrett</u>, the Cappello Plaintiffs have also alleged circumstantial evidence of disparate treatment. For example, they allege that a policy, which prevented individuals who had been promoted in the past year from applying for another

promotion, was applied exclusively to females and not males.  (Consolidated Compl. at ¶ 302.)

There are also other allegations that a regional manager at NYCB told a plaintiff that "a working

woman needed to know what her priorities were." (Id. at ¶ 313.)  One of the Cappello Plaintiffs

also alleges that she complained to "NYCB Human Resources questioning her salary which was

not in line with younger, less experienced males."  (Id. at ¶ 306.)

Like the court in Barrett, the Court finds that these additional allegations permits a

plausible inference that the alleged disparities in pay occurred as a result of gender

discrimination. See 2014 WL 4058683, at *19 ("For purposes of a motion to dismiss, however,

Plaintiffs' allegations that a number of managers made sexist comments, coupled with allegations

that the Company repeatedly ignored complaints of harassment and discrimination, permits at

least a plausible inference that the disparities in base pay occurred as the result of intentional

discrimination."); see also Johnson v. Long Island Univ., No. 13-CV-2464 (JS), 2014 WL

4926324, at *9 (E.D.N.Y. Sept. 30, 2014) ("Although the Complaint is sparse on specifics with

respect to how his colleagues are similarly situated to him, the Court finds that Plaintiff has

stated a plausible inference of discrimination based on disparate treatment with respect to the

claims that [the defendant] treated him differently by denying him the opportunity to earn

additional compensation and by assigning him significantly more work than his fellow hall

directors, but just barely.")

Therefore, the Court denies the Defendants' motion to dismiss the Cappello Plaintiffs'

NYSHRL gender discrimination claims.

# III. CONCLUSIONS

For the foregoing reasons, it is hereby:

**ORDERED**, that claims against the Individual Defendants are dismissed with prejudice, and

**ORDERED**, that the Plaintiffs' Sixth Cause of Action based on Title VII retaliation is dismissed with prejudice, and

**ORDERED**, that the Plaintiffs Abbruzzese, Golinello, Smith, and Triano's claims are dismissed with prejudice, and

**ORDERED**, with respect to the Cappello Plaintiffs, that the First Cause of Action for ADEA Age Discrimination; Second Cause of Action for Title VII gender discrimination; Third Cause of Action for Title VII race discrimination; and Fourth Cause of Action for ADA discrimination are dismissed with prejudice, and

**ORDERED**, with respect to the Cooper Jones Plaintiffs, that the Third Cause of Action for Title VII race discrimination and Fourth Cause of Action for ADA discrimination and are dismissed with prejudice, and

**ORDERED**, with respect to the individual Plaintiff Cooper Jones, that the Fourth Cause of Action for ADA discrimination is dismissed with prejudice, and

**ORDERED**, that the Plaintiff Titus's claims are dismissed with prejudice, and

**ORDERED**, that the Defendants' motion to strike certain documents appended to the Plaintiffs' brief as exhibits is denied, and

**ORDERED**, that the Plaintiffs' Eighth Cause of Action for intentional infliction of emotional distress and Ninth Cause of Action for negligent infliction of emotional of distress are dismissed with prejudice, and

**ORDERED**, with respect to the Cooper Jones Plaintiffs, that the First Cause of Action for Age Discrimination; Second Cause of Action for Title VII and NYSHRL gender discrimination; the Third Cause of Action for Title VII and NYSHRL race discrimination; and Fourth Cause of Action for discrimination under the ADA are dismissed with prejudice, and

**ORDERED**, with respect to the Plaintiff Warshun, that the Fourth Cause of Action for discrimination under the ADA is dismissed with prejudice.

For the purpose of clarity, the Court notes that the following claims are not dismissed at this time and remain viable at this point in the law suit:

- (i) the Plaintiffs' fifth and tenth causes of action against the Corporate Defendants for violation of the state and federal WARN Acts;

- (ii) with respect to the Cappello Plaintiffs, the second cause of action against the Corporate Defendants for gender discrimination under the NYSHRL;

- (iii) the Plaintiff Garnett-Bisop's claims against the Corporate Defendants for (a) ADEA age discrimination (First Cause of Action), (b) Title VII and NYSRHL sex discrimination (Second Cause of Action), (c) Title VII and NYSHRL race discrimination (Third Cause of Action), and (d) violation of the federal and state WARN Acts (Fifth and Tenth Causes of Action);

- (iv) the Plaintiff Warshun's claims against the Corporate Defendants for (a) ADEA age discrimination (First Cause of Action), (b) Title VII and NYSHRL sex discrimination (Second Cause of Action), and (c) violation of the federal and state WARN Acts (Fifth and Tenth Causes of Action); and

- (v) the Plaintiff Tiger's claims against the Corporate Defendants for (a) ADEA age discrimination (First Cause of Action), (b) Title VII and NYSRHL sex discrimination (Second Cause of Action), and (c) violation of the federal and state WARN Act (Fifth and Tenth Causes of Action).

**SO ORDERED.**
Dated: Central Islip, New York
November 6, 2014


_____/s/ *Arthur D. Spatt*_____
ARTHUR D. SPATT
United States District Judge